UNITED STATES DISTRICT COURT
OF THE DISTRICT OF MASSACHUSETTS

C.A. NO. 04-11971-GAO

```
*****************************
JANET M. BUTLER,              *
     Plaintiff,               *
                              *
                              *
v.                            *
                              *
MARK S. BEATON, Individually  *
and in his capacity as a Member of *
the BOARD OF SELECTMEN OF     *
THE TOWN OF KINGSTON,         *
PAUL M. GALLAGHER, OLAVO      *
B. DEMACEDO, JOSEPH D.        *
KELLEHER, RICHARD E.          *
KENNEY in their capacities as *
Members of the BOARD OF       *
SELECTMEN OF THE TOWN OF      *
KINGSTON and TOWN             *
OF KINGSTON,                  *
     Defendants.              *
*****************************
```

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

INTRODUCTION

The plaintiff, Janet M. Butler, an alternate, appointed member of the Kingston Zoning Board of Appeals brings the instant action to challenge the August 24, 2004 decision of the Kingston Board of Selectmen removing her for "cause" purportedly under Mass. Gen. L. c. 40A, §12.    Since the plaintiff, Janet M. Butler, can demonstrate all that is required for preliminary injunctive relief against the municipality, the defendant, Kingston Board of Selectmen, this Honorable Court must issue an order precluding the defendant, Board of Selectmen, from appointing an alternate member of the Zoning

1

Board of Appeals to replace the plaintiff, Janet Butler, pending a full hearing on the merits of the case.

## STATEMENT OF FACTS

1. The plaintiff, Janet M. Butler, was re-appointed for a one-year term as an alternate member of the Zoning Board of Appeals (a five member board with two alternate positions) on or about June 1, 2004 by the defendant, Kingston Board of Selectmen (hereinafter the "Selectmen"). Verified Complaint at ¶ 4.

2. At the time she was reappointed, the defendant, Selectmen knew that the plaintiff, Janet M. Butler, had missed a number of meetings during her prior appointed term on the Zoning Board of Appeals and had technically violated the written policy of the Board of Selectmen concerning attendance at meetings of appointed boards. Verified Complaint at ¶ 4. In fact, the defendant, Selectmen Mark P. Beaton, criticized the plaintiff, Janet Butler's, performance and publicly mis-portrayed her attendance record prompting the plaintiff, Janet Butler, to appear during the "public forum" section of the following meeting of the Selectmen to correct the record concerning her attendance. Verified Complaint at ¶ 8 & 9.

3. Also at the time she was reappointed, the Selectmen continued to leave unfilled the vacant second alternate position on the Zoning Board of Appeals. This second alternate position had been vacant for approximately one year pre-dating Butler's reappointment. Verified Complaint at ¶ 5.

2

4. On July 7, 2004, the plaintiff, Janet M. Butler, acting as a full member of the Zoning Board of Appeals since two full-time members had missed meetings involving the special permit matter and a third member (Stanley Kuzborski) had recently resigned in advance thereof, voted as a part of a three member Board of Appeals, believing that she was doing so in compliance with a written opinion of Town Counsel, Kopelman & Paige, PC relating to constructive approvals. Verified Complaint at ¶ 13-18. The plaintiff, Butler, had been provided this opinion by Kuzborski, the former chair, to assist her with understanding how to act in circumstances of a potential constructive approval. Verified Complaint at ¶ 12.

5. Sometime after the meeting of July 7, 2004, the plaintiff, Janet M. Butler attempted to speak with Town Counsel, Jason Talerman, Esq. of Kopelman & Paige, PC., concerning matters before the Zoning Board of Appeals including without limitation procedural and substantive questions concerning pending 40B affordable housing matters. The plaintiff, Butler, expressed concern over the role, if any, of the Selectmen in such matters. Talerman, explaining that he worked for the Selectmen, recommended that she contact Donald Schmidt of the MA Department of Housing and Community Development to have such questions answered. Butler contacted Schmidt with her concerns. Verified Complaint at ¶ 10.

6. On or about July 27, 2004, the Selectmen conducted a so-called "educational meeting" for the Zoning Board of Appeals at which time the defendant, Mark Beaton, used his position as chairman of the Selectmen to ask pre-prepared questions to town

3

counsel purportedly on behalf of the Zoning Board of Appeals.   Verified Complaint at ¶ 21-22.   The hearing was conducted publicly by the Selectmen and in a manner so as to embarrass the membership of the Board of Appeals.   The tone of the meeting was also disciplinary in nature.

7.   On July 28, 2004, the plaintiff, Janet M. Butler, became obligated to miss a meeting of the Board of Appeals as a result of a conflict with her personal business schedule which required her to attend an evening meeting of another Board of Appeals in Athol, Massachusetts.   Butler gave advance notice of her intention to miss and/or be late for the meeting to the Town Planner, Tom Bott, and fellow, Board member, Joseph Palumbo.   At that time, Butler expected that would be at least four full-time members of the Board of Appeals to conduct the business of the Board that evening.   Verified Complaint at ¶ 24.

8.   On August 1, 2004, the defendant, Mark Beaton, sought the advice of Town Counsel to determine whether the Selectmen could assume the duties and responsibilities of the Board of Appeals to conduct hearings on 40B matters.   Sometime prior to August 10, 2004, Town Counsel opined that the Selectmen could not assume the functions of the Zoning Board of Appeals.   Verified Complaint at ¶¶ 25-26.

9.   On August 10, 2004, stating that the members of the Board of Appeals were not "competent" to sit on the important issues before it, the defendant, Mark Beaton,

4

demanded the resignations of each and every member of the Board of Appeals. Verified Complaint at ¶ 27.

10. As of August 17, 2004, after the plaintiff, Butler, and three other members of the Board of Appeals refused to resign, the defendant, Mark Beaton, raised the issue of charges being brought by the Selectmen against the plaintiff and other Board members. In fact, the defendant, Beaton, and the members of the Board of Selectmen, discussed and deliberated on a prepared list of potential charges to bring against the remaining members of the Board of Appeals and then conducted votes to bring certain charges against said Board members, including Butler. Verified Complaint at ¶ 29-32. The Board's second vote that evening was to deny the Board of Appeals members counsel in connection with their defense against said charges.

11. On August 18, 2004, the plaintiff, Janet Butler, was provided through her counsel with written notice of the charges[1] and advised that she would have the right to counsel, the right to present evidence and "cross-examine witnesses." Immediately thereafter, the plaintiff, Janet Butler, raised the issue of the lack of impartiality of the defendant, Mark Beaton, given his course of conduct, involvement in the investigation and past public statements unfairly critical in particular of Butler. The plaintiff, Butler, also requested information concerning eleven (11) topics which had a bearing on the fairness of the contemplated hearings and other absenteeism of town officials. Verified Complaint at ¶ 32-33 & Exhibit C.

---

[1] See Exhibit B for the two charges: (1) that she voted on a matter which she was informed she could not vote on resulting in the need for the applicant to refile; and (2) that she missed three meetings in the last six months resulting in a violation of the Selectmens' written attendance policy.

5

12. On Monday, August 23, 2004, plaintiff's counsel received a copy of a faxed letter dated August 20, 2004 from Town Counsel purporting to respond to the August 18, 2004 letter from the plaintiff. The Board of Selectmen agreed to produce certain records as a public records request in exchange for the photocopying costs but objected to other requests (concerning the absences and attendance records of other Boards) unless the plaintiff paid a $2,320.00 research and copying fee in advance. Verified Complaint at ¶ 34 & Exhibit D.

13. As of August 23, 2004, the plaintiff, Janet Butler, was further informed by Kingston that even if she wanted the records concerning absences and attendances, there was no way that this information could be prepared prior to the hearing. Town Counsel Mark Reich also further indicated that the defendant, Mark Beaton, would not recuse himself, that the plaintiff, Butler would not be permitted by the Board of Selectmen to cross-examine witnesses (as indicated in writing previously) or ask questions of the Board members (even though they were believed to have been involved in the investigation of the charges), and that the evidence would be largely documentary. Attorney Reich further indicated that the procedure for the hearing would decided at the hearing by the Selectmen. Verified Complaint at ¶ 36. Once again, the plaintiff questioned in writing the fundamental fairness of such a hearing. Verified Complaint at ¶ 37 and Exhibit E.

14. On August 24, 2003, at the commencement of the proceedings, the defendant, Mark Beaton, acting as chairman of the Board of Selectmen, made a statement concerning the procedure for the hearing, indicated that town counsel, Mark Reich, would explain the charges, that Board member or his or her counsel would have a chance to speak in response to the charges, that the public then would be permitted to speak, and then the Board would deliberate on the charges and decide the matter. Beaton expressly indicated there would be no right to cross-examine witnesses, any member of the Selectmen, or any member of the public who spoke. Only after protest by plaintiff's counsel, was the additional right to make a reply to public comment permitted; however, the right to cross-examine anyone was again denied by Beaton. Verified Complaint at ¶¶ 38-39.

15. In addition, prior to Butler's meeting commencing, Richard Kenney, a fellow Selectmen, recused himself without any request to do so by Butler, citing the conflict raised in connection with his sitting as a member of the Board of Selectmen in the event hearings related to Joseph Palumbo were commenced. The plaintiff indicated that she did not believe there was any conflict in Mr. Kenney's remaining a member of the Board of Selectmen for her matter; however, Kenney still recused himself. Verified Complaint at ¶ 38.

16. During the public portion of the meeting, the defendant, Beaton, again acting as chairman of the Selectmen, refused to allow the plaintiff or counsel to explain the basis for her request that the chairman recuse himself, refused to allow the plaintiff or counsel

7

to explain in meaningful detail the about absences from other municipal boards (elected and appointed) and otherwise limited the plaintiff's reply to the charges. Beaton further allowed town counsel, Mark Reich, Esq., in reply, to opine without any factual basis or personal knowledge on his part on the credibility of the plaintiff (allowing him to suggest she was lieing about having a memo from town counsel), allowed discussion of matters not in evidence (including absences outside of the scope of 6 months period and during a prior term), and offered personal opinion about statements which he alleged that the plaintiff made on the videotape of the July 7, 2004 meeting which in fact were not made. Verified Complaint at ¶¶ 40-42.

17. At the conclusion of the hearing, the defendant, Mr. Beaton, requested a vote from the remaining membership of the Board of Selectmen which voted to remove her without any express finding of a violation of either of the charges which had been brought against her. Verified Complaint at ¶ 43.

18. After the meeting was over outside the scope of the hearing, the defendant, Beaton, made further false statements to the media that the plaintiff had been charged with a conflict of interest for sitting on a sign variance matter when in fact that charge was never made against her and never came up at the public meeting. Verified Complaint at ¶ 44.

## ARGUMENT

I.  THE PLAINTIFFS ARE ENTITLED TO IMMEDIATE INJUNCTIVE RELIEF.

A. The Standard for Preliminary Injunction.

Under well-settled principles of Massachusetts law, a plaintiff is entitled to injunctive relief upon a demonstration of the following: (1) likelihood of success on the merits; (2) irreparable injury if the injunction is not granted; (3) that such injury to the plaintiff outweighs any similar harm which the defendants would suffer by the issuance of the injunction; and (4) the public interest would not be adversely affected by the granting of the injunction. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-617 (1980); Lanier v. Massachusetts Parole Board, 396 Mass. 1018 (1986).

The SJC held in Packaging Industries that a preliminary injunction shall issue where it is shown through "an abbreviated presentation of the facts and the law....[that] the moving party .....without the requested relief....may suffer a loss of rights that cannot be vindicated should it prevail after a full hearing on the merits." Id. at 616. (emphasis added.). If the Court finds that there is a substantial risk of irreparable harm to the moving party, it must be balanced against any similar risk to the other party in light of each party's chance of success on the merits. Id. at 617. Most importantly however, where the balance of hardships cuts in favor of the moving party, the right to an injunction may be established merely by a "prima facie appearance of grounds to support the contentions of the plaintiff". 8A Smith and Zobel, Mass. Prac. Ser., sec.65.4 at 81, *quoting*, Gallison v. Downing, 244 Mass., 33, 38-39 (1923).   Whereas, in the instant case, the plaintiff, Janet M. Butler, is clearly able to satisfy each prong of the test for a preliminary injunction, this Court should issue such an injunction.

B. <u>The Likelihood of Success by the Plaintiffs.</u>

Under G. L. c. 40A, §12 (the "statute") the Board of Selectmen purports to have acted to remove the plaintiff, Janet M. Butler, for "cause" from her position as an alternate member of the Zoning Board of Appeals. This section of the Massachusetts General Laws states as follows:

"Any member may be removed for cause by the appointing authority upon written charges and after a public hearing."

Mass. Gen. L. c. 40A, §12.

According to town counsel, Mark Reich, Esq., who spoke at the public meeting (as both Town Counsel and the proponent of the charges for the Selectmen), "cause" within the meaning of this section was merely any reason advanced in good faith and honest judgment. Town counsel, further, indicated that Courts which have examined the sufficiency of such "cause" have reviewed such "cause" under the so-called "arbitrary and capricious" standard of review a very low standard to meet and which is afforded considerable deference.

Notwithstanding this opinion rendered at the hearing, the plaintiff, Janet Butler, maintains that Massachusetts courts reviewing purported decisions removing public officials have identified at least two different standards of review the (1) arbitrary and capricious standard and (2) the "substantial evidence" test and also given two very different meanings to the term "cause". See <u>Levy, et al. v. Acting Governor, et al.</u>, 436 Mass. 736, 767 N.E.2d 66 (2002) (involving legal challenge by members of MA Turnpike Authority to acting governor's attempt to remove them from authority). Which standard of review is to be implemented, according to the Supreme Judicial Court,

10

and therefore what constitutes "cause" is determined in the context of the power of the Authority [here, the Board of Appeals] to act in the circumstances . . ."   Id. at 749, 767 N.E.2d at 75.   In Levy, the Supreme Judicial Court held, in reversing the decision of the acting governor, that the two members of the Authority (which was independent of executive oversight) should only be removed where there was "cause" in the "order of malfeasance or willful neglect of duty."   Id.

While the Board of Appeals is a board over which the Selectmen have the powers of appointment and removal for "cause" as set forth in Gen. L. c. 40A, §12, once appointed, the Board of Appeals, has distinctive statutory duties and responsibilities over which there is no supervisory or managerial responsibility by the Selectmen.   In fact, the Supreme Judicial Court has held that a zoning board of appeals, when acting in the course of its regular duties, acts as a "quasi-judicial" body and performs "quasi-judicial" functions.   Walker v. Board of Appeals of Harwich, 388 Mass. 42, 50 fn.6, 445 N.E.2d 141, 150 (1983) (other citations omitted); also Gen L. c. 40A, §7, 9, 10, 12, 15 & 17.   In another context (and a context believed very applicable herein), the Zoning Board of Appeals, is granted broad "quasi-judicial" discretionary permit granting authority under the provisions of Gen. L. c. 40B, §§20-23 (the so-called "Comprehensive Permit" statute) to conduct public hearings into and render decisions on behalf of all of the local municipal boards and commissions concerning so-called "affordable housing" projects. See Mass. Gen. L. c. 40B, §21 (the board of appeals authority to conduct hearings and issue comprehensive permits)[2].   The individuals appointed to such Boards of Appeals

---

[2] Gen L. c. 40B, §21 provides as follows:  Any public agency or limited dividend or nonprofit organization proposing to build low or moderate income housing may submit to the board of appeals, established under section twelve of chapter forty A, a single application to build such housing in lieu of separate applications to the applicable local boards. . . .  The board of appeals shall request the appearance at said hearing of such

11

must comport their conduct to strict state ethical laws which further regulate their conduct as municipal officials.   See Mass. Gen. L. c. 268, §23(b)

Regardless of which definition of "cause" is used and what level of review is afforded, the defendant, Board of Selectmen, cannot comport their conduct to either of these standards.

1. *Removal on account of the July 7th vote is arbitrary and violative of free speech rights.*

As is evident from the documentation attached to the verified complaint and as to the sworn allegations contained therein, the plaintiff, Janet Butler, was firstly removed[3] by the Board of Selectmen for voting in accordance with her alleged "good faith" interpretation of a written opinion of Kingston town counsel, Kopelman & Paige, containing voting instructions provided by her recently resigned chairman.   Butler's clear and convincing evidence was unmet by <u>any</u> countervailing evidence (other than the speculative personal opinion of the town's attorney (who opined she might not have had it) which was allowed into consideration by Beaton).   See Verified Complaint at ¶¶12-

---

representatives of said local boards as are deemed necessary or helpful in making its decision upon such application and shall have the same power to issue permits or approvals as any local board or official who would otherwise act with respect to such application, including but not limited to the power to attach to said permit or approval conditions and requirements with respect to height, site plan, size or shape, or building materials as are consistent with the terms of this section. The board of appeals, in making its decision on said application, shall take into consideration the recommendations of the local boards and shall have the authority to use the testimony of consultants.

[3]   The Board of Selectmen never filed any decision with the Kingston Town Clerk or articulated the specific cause for removal during the hearing.   A public records request was served upon the Town of Kingston Board of Selectmen the day following the hearings and there has been no response from the Town of Kingston.

18 and Exhibit A.   Accordingly there was no "cause" under any standard to remove her and to do so would be plainly "arbitrary" and without any "cause" whatsoever.

Furthermore removal of Butler is violative of her constitutionally protected free speech rights.  The written notice to Butler from the Board of Selectmen dated August 17, 2004 (see Exhibit B) further clearly connects the contemplated action of removal to her "vote" on an issue in a specific manner.   It is an obvious conclusion, therefore, if her voting was a protected form of speech that this vote was a "substantial and motivating" factor for the adverse action taken against her.

In Stella v. Kelley, United States Court of Appeals for the First Circuit resolved the issue of the protected nature of voting as a form of speech protected by the First Amendment.   Stella v. Kelley, 63 F.3rd 71, 75 (1995) (holding that voting by members of municipal boards, commissions and authorities comes within the heartland of the First Amendment doctrine).   In addition, the only evidence received by the Selectmen showed that her vote was clearly rendered in accordance with a written legal opinion of the same law firm which was incredibly advising and advocating, on behalf of the Selectmen, for the removal of the plaintiff, Janet Butler.

Since the plaintiff, Butler, establishes clearly that her voting was consistent with a good faith interpretation of a written opinion of town counsel, involved constitutionally protected activity (voting) and that this was a substantial and material factor in her removal, there is little doubt that the defendant, Selectmen, can sustain its burden to show that it would have acted "in the same way" in the absence of the protected conduct. Accordingly, there was no factual or legal basis for its action.

   2.   *There was no violation the Attendance Policy of the Board of Selectmen as charged and further removal was inconsistent with past practice of the Selectmen.*

The second basis for the purported action to remove the plaintiff, Janet Butler, was her alleged absence three (3) times within the "last" six months in violation of the written attendance policy promulgated by the Board of Selectmen. See Exhibit B (describing the charges). Butler, through counsel advised the Selectmen, of the following in response to this charge:

   1.   That there had only been <u>two</u> absences for "good cause" within the last six months counting back from the date notice was given (August 17, 2004) on July 28, 2004 and on April 7, 2004 and that she had attended as many as three meetings a month during the last six months, more than all other boards in town and further she did so as an alternate not full member,

   2.   That the meetings were missed for proper cause to attend to her children when there was a family conflict (on April 7, 2004) and to attend a business meeting in front of another Board of Appeals in Athol, MA for the business she owns (on July 28, 2004);

   3.   That she had given advance notice of her missing the meetings and that there was no evidence of any harm to the Board as a result of missing those meetings;

   4.   That the Board of Selectmen was aware in the past and at the time it reappointed her on June 1, 2004 for a new term that there had been a technical violation of this policy and it did not prevent them from reappointing her then;

   5.   That the Board of Selectmen had to look into past terms of appointment to justify its cause; and,

   6   That in June of 2004 the Board of Selectmen did not remove and did not conduct a removal hearing for Sean O'Donnell, a local developer sitting as a Conservation Commission member who had six absences in three months and three additional tardys and had not even conducted itself like it intended to do so.

14

The plaintiff, Janet Butler, attempted to offer evidence concerning the number of missed meetings by other elected officials and appointed officials but was either (1) denied the ability to do so by the defendant, Mark S. Beaton, who chaired the hearing or (2) was denied a meaningful opportunity to obtain this information in advance of the hearing when that information could not be made available by the Town of Kingston prior to the hearing.    See Verified Complaint at ¶¶ 33, 35 & 40 & Exhibit E.

Clearly, based on the foregoing, the Selectmen, placed undue reliance on the advice of counsel (which acted as prosecutor, counsel to the Selectmen and had unwittingly provided the documentation used as a basis for the plaintiff's action), looked into Butler's prior appointed term to identify other absences existing at the time of reappointment to support charges to remove her, ignored the fact that Butler had missed only two meetings within "last" six months, deliberately ignored its own conduct and practice in dealing with this attendance policy and prior violations thereof by another appointed officials, considered evidence not included in the record, including a videotape of the July 7, 2004 meeting of the Board of Appeals, and did not have sufficient evidence of a violation of the policy as charged.    Given the state of the evidence, the lack of any vote on specific cause and lack of written findings, there is a strong likelihood that Butler's removal was occasioned by reasons other than the "cause" identified.

> 3.    *Butler's due process rights were violated by the procedural deficiencies of the hearing process and the adjudication of the matters by Board which was not impartial.*

15

In <u>Stella</u>, cited above, the First Circuit Court of Appeals, also opined that appointed officials should not be treated any differently from elected officials in terms of the rights afforded to each under the First Amendment. <u>Stella</u>, at 76. The plaintiff, Butler, therefore also contends she should have been afforded the same minimal due process in connection with her purported removal. See also <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 105 S.Ct. 1487 (1985) (public employees cannot be deprived of property right by the state without due process).

In Massachusetts and in the United States, there is a general recognition that the "fundamental requisite of due process is an opportunity to be heard at a meaningful time and in a meaningful manner." See <u>In re: Lawrence J. Kenney</u>, 399 Mass. 431, 435, 504 N.E.2d 652, 655 (1987) (other citations omitted); also <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 105 S.Ct. 1487 (1985). What process is due is determined by a balancing of three factors set forth by the Supreme Court: the private interest affected, the governmental interest, and an evaluation of the procedure used. See <u>Kenney</u> at 435-436, 504 N.E.2d at 655.

In this case, there is a clearly protected and recognizable private interest at stake i.e. (1) the continuation in the appointed position and fulfillment of the duties and responsibilities of the appointed office and (2) the right to play a role in the development of the Town of Kingston, the community where she resides. While this position may be uncompensated voluntary position, as with other types of elected or appointed positions, it is highly likely that the questionable circumstances under which Butler was removed (and have been publicized) will prove to be further burdensome in her personal and professional life. Accordingly, there is a protected property right at stake.

It is likely that the Board of Selectmen will argue that there was an overriding interest here in immediate termination of the plaintiff and other Board of Appeals members and an urgent need to avoid disruption in the matters pending before the Board of Appeals. It is expected that Selectmen will argue their immediate interests outweigh this minimal private interest and dictates that Butler be afforded simply the right to be heard While the Butler, shares the desire to avoid disruption in such matters, she contends that there should have been and should now be greater governmental interest in preventing "arbitrary", legally untenable and constitutionally suspect action by the Selectmen and further the preservation of due process to public officials who are accused of "cause" for removal Butler further claims that there must also be fairness to persons with matters pending before Board of Appeals whose rights to proceed have been potentially detrimentally impacted by the action of the Selectmen in removing two members and forcing the resignation of three other members, stripping the Board of Appeals of its capacity to act.

While in Cleveland Board of Education v. Loudermill, the United States Supreme Court held that the "formality and procedural requirements for hearings can vary given the importance of the interests involved and nature of the subsequent proceedings" and that "'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action", Cleveland at 546, 105 S.Ct. at 1496 (1985) (dismissal of public employee was consistent with due process where there was subsequent administrative review and judicial review), in the instant case, basic principles of fairness requires more than a merely the right to speak on her own behalf to a Board whose lack of objectivity is beyond doubt.

In the instant case, there were clear factual disputes, allegedly erroneous records being relied on by the Selectmen and an overwhelming evidence that the Selectmen (or at least one member) were likely not to be impartial given the relevant conduct (including efforts to force resignations and attempt to usurp the Board of Appeals' authority prior to making charges) and also the highly critical statements and misstatements by the Selectmen about the Board of Appeals and its members including the plaintiff, Butler. The hearing was also presided over and conducted in a very partisan and unfair manner further evidencing the obvious bias claimed by Butler, including, the intentional refusal to explain in advance the exact nature of proceedings despite written request to do so, the denial of right to obtain records for precedential value, the denial (after initially offering the right) of the right to confront and cross-examine the persons investigating and developing the charges, limitations placed on the right to speak in defense of the charges (including about the lack of objectivity of the Selectmen), consideration of facts not in evidence (including absences from another term), and the personal testimony by the defendant, Beaton, concerning the statements of the plaintiff, Butler, allegedly shown on a videotape but not displayed as a part of the record.

In the instant case, the given the expected record (for certiorari review) and the lack of any post termination review procedures with greater rights, the ability for confrontation and cross-examining adverse witnesses and persons who investigated the charges was absolutely essential to challenge the source of the information and produce contrary evidence sufficient to support a finding that the plaintiff, Butler, had not violated the charges against her but was being removed in violation of her rights. It was further nearly predictable, that Butler, would be removed when the defendant, Beaton, refused to

step aside.   Said conduct clearly deprived her of a meaningful opportunity to be heard by a fair and impartial decision-maker in violation of her rights

### C. Irreparable Harm to the Plaintiff.

The second element in any request for injunctive relief is that without the requested relief the moving party will suffer a loss of rights or other irreparable harm not capable of remediation by final judgment in law or in equity. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-617 (1980).  In the instant case, if the Selectmen are allowed to appoint a successor to fill the alternate position from which Butler was purportedly removed, the plaintiff, Butler, will suffer a loss of rights and irreparable harm inasmuch as Board of Appeals will proceed to hear and decide matters on which she was sitting when removed or upon which had a right to sit during the remainder of her appointed term.    Parties with matters pending before the Board of Appeals may also have had their rights infringed by the Selectmen.   These rights are intangibles and the opportunities are likely to be gone if the Selectmen are allowed to appoint a successor. On the other hand, it is not at all clear that the Selectmen or the Board of Appeals which remains suffer any harm at all since the Selectmen neglected to appoint a second alternate for over a year preceding the removal of the plaintiff and the newly constituted Board of Appeals as of September 7, 2004 has a complement of five (5) full time members and one alternate member, two more than is required for an effective quorum under Gen. L. c. 40A, §15.

D. <u>Balancing of the Harms.</u>

In balancing the harms, it is clear that in certain circumstances the issuance of injunctive relief caused as much, if not more harm, to the party opposing the injunctive relief. However, in the instant case, this is simply not the case. The defendants, Selectmen, will not be harmed at all since for over a year the Board of Appeals functioned without filling the second alternate position. Further, there now exists a full Board of Appeals of five and one alternate to conduct the interim business of the Board.

## CONCLUSION

Since the plaintiff, Butler, sets forth a strong likelihood of success on the merits of her challenge to her removal, is able to demonstrate irreparable harm to her and that there is no other adequate way to prevent irreparable harm other than to preclude the appointment of a successor during the pendency of this matter, and that the Town of Kingston has no such similar harm, this Honorable Court should enjoin the defendants, Selectmen and Town of Kingston from appointment of a successor alternate member of the Board of Appeals pending the outcome of this matter.

Respectfully Submitted
Janet M. Butler
By her Counsel,

DATED: 13-Sep-04

Robert W. Galvin, Esq. (561397)
Galvin & Galvin, SP
10 Enterprise Street, Ste. 3
Duxbury, MA  02332-3315
(781) 934-5678