UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11971-GAO

JANET M. BUTLER, )
)
      Plaintiff, )
VS. )
)
)
MARK S. BEATON, Individually and in his capacity )
as a Member of the BOARD OF SELECTMEN OF )
THE TOWN OF KINGSTON, )
PAUL M. GALLAGHER, OLAVO B. DEMACEDO, )
JOSEPH D. KELLEHER, RICHARD E. KENNEY )
in their capacities as Members of the )
BOARD OF SELECTMEN OF THE TOWN OF KINGSTON )
and TOWN OF KINGSTON, )
)
      Defendants. )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

I.    Introduction.

Mark S. Beaton, individually and in his capacity as a Member of the Board of Selectmen of the Town of Kingston, Paul M. Gallagher, Olavo B. DeMacedo, Joseph D. Kelleher, Richard E. Kenney in their capacities as members of the Board of Selectmen of the Town of Kingston and the Town of Kingston ("Defendants") move for the denial of the Plaintiff's Motion for a Preliminary Injunction in which Janet M. Butler ("Plaintiff") seeks an order enjoining the Defendants from appointing an alternate member to the Zoning Board of Appeals to replace the Plaintiff. Such an order is not justified in law or equity for the following reasons: 1) the Board of Selectmen's removal of Plaintiff for cause from the Zoning Board of Appeals was not arbitrary or capricious; 2) Plaintiff cannot prove a likelihood of success on the merits of her claims; 3) Plaintiff

cannot show irreparable harm in the absence of an injunction; and 4) the harm to Defendants and the public outweighs any harm to Plaintiff. Therefore, as Plaintiff's request for a preliminary injunction does not meet the required standard, it should be denied.

II.  <u>The Standard.</u>

In order for Plaintiff to obtain the injunctive relief she seeks, Plaintiff must establish "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." <u>Charlesbank Equity Fund II v. Blinds to Go, Inc.</u>, 370 F.3d 151, 162 (1st Cir. 2004) (quoting <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 15 (1st Cir. 1996)). The First Circuit Court of Appeals has frequently said that likelihood of success is an essential prerequisite for the issuance of a preliminary injunction. See <u>New Comm Wireless Servs., Inc. v. SprintCom, Inc.</u>, 287 F.3d 1, 9 (1st Cir. 2002) ("The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.") Nevertheless, no matter how strong the likelihood of success, some irreparable harm in the absence of an injunction must be proven. <u>Equal Employment Opportunity Comm'n v. Astra USA, Inc.</u>, 95 F.3d 738, 743 (1st Cir. 1996). Therefore, "the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." <u>Id.</u> at 743 (quoting <u>Beacon Theatres, Inc. v. Westover</u>, 359 U.S. 500, 506-507 (1959)).

III.  <u>The Facts.</u>

The facts referred to herein are those alleged in the Plaintiff's Complaint, the Plaintiff's Memorandum of Law in Support of Motion for Preliminary Injunction, and the attached Affidavit of Counsel. However, the Defendants do not waive their right to present additional facts should the opportunity and necessity arise.

IV.   Argument.

  A.   The Plaintiff Cannot Show She Will Suffer Irreparable Harm.

The plaintiff will not be irreparably harmed if the preliminary injunction is denied. It is worth noting that with respect to the essential element of irreparable harm, her Motion for a Preliminary Injunction makes no argument or even mention of the concept. Her argument in her supporting Memorandum of Law is limited to the observation that the Board of Appeals will hear and decide matters in her absence. Memorandum of Law at 19.

"Irreparable harm" is proven if, absent an injunction, the plaintiff will "suffer a substantial injury that is not accurately measurable or adequately compensable by money damages." Ross-Simons, 102 F.3d at 19. "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." Charlesbank, 370 F.3d at 162. "A preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm." Ross-Simons, 102 F.3d at 19; see also Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6-7 (1st Cir. 1991); Pub. Svc. Co., v. Town of W. Newbury, 835 F.2d 380, 383 (1st Cir. 1987). Rather, the threat of irreparable harm must be real and immediate.

The plaintiff does not argue with specificity, let alone convincingly demonstrate, what harm she will suffer in the absence of injunctive relief. That

3

failure alone is sufficient grounds to deny plaintiff's request. In <u>Rushia v. Town of Ashburnham</u>, 701 F.2d 7, 10 (1st. Cir. 1983) the Court stated, "the fact that [plaintiff] is asserting First Amendment rights does not automatically require a finding of irreparable injury." Further, regarding irreparable harm, the Court has stated that "the alleged denial of procedural due process, without more, does not automatically trigger such a finding." <u>Pub. Svc. Co., v. Town of W. Newbury</u>, 835 F.2d at 382. Moreover, plaintiff has not demonstrated that defendants will be unable to pay compensatory money damages in the unlikely event that plaintiff prevails on the merits.

    B.    <u>Balancing the Risks of Harm Favors the Defendants and the Public Interest</u>.

In this case it is most appropriate to consider together the third and fourth factors of the preliminary injunction analysis – the balance of hardships and the public interest. The Plaintiff cannot show that the balance of the equities rests in her favor. If the court grants the preliminary injunction, the Defendants and the public will suffer much greater harm than the Plaintiff will suffer if the court does not grant the injunction. See <u>Tri-Nel Management, Inc</u>. 433 Mass. At 219 (where plaintiff is seeking to enjoin governmental action, the court considers the risk of harm to the public). The need for public officials to perform their duties in a manner that is appropriate (attending meetings) outweighs the harm to the Plaintiff in her removal from the Zoning Board of Appeals. Moreover, if the Defendants are enjoined from filling the vacant position, there is a viable threat that the Zoning Board of Appeals will not be able to act in the necessary quorum required. See Plaintiff's Complaint ¶ 17. See also Affidavit of Counsel. Although the Plaintiff will suffer a loss of membership on the Zoning Board of

4

Appeals, she will have a voice on Zoning matters as a member of the Kingston community. Thus, the equities are in favor of the Defendants and the public.

  C. <u>Plaintiff Has No Likelihood of Success on the Merits</u>.

The instant action makes a claim for an injunction preventing the Board of Selectmen of the Town of Kingston from appointing an alternate member of the Zoning Board of Appeals to replace the Plaintiff, pending a full hearing on the merits of this case. Further, the complaint includes counts for (1) wrongful removal for cause within the meaning of Massachusetts General Laws ("M.G.L.") chapter 40A § 12; (2) dismissal effectuated in order to influence the results of matters pending before the Zoning Board of Appeals in which the plaintiff had been acting as a full member since July 7, 2004; and (3) violation of plaintiff's due process rights which guarantee the right to a meaningful opportunity to be heard. Plaintiff Janet M. Butler will not prevail on any count of her complaint.

As the Plaintiff asserts in her supporting memorandum of law, the Zoning Board of Appeals for Kingston is an entity over which the Kingston Board of Selectmen have the right to appoint and the right to remove for cause any member of the Zoning Board of Appeals. See Plaintiff's Memorandum at 1, 12; M.G.L. c. 40A § 12. The plaintiff alleges that under either the "arbitrary and capricious" standard or the "substantial evidence" standard of review, the actions of the Board of Selectmen in dismissing plaintiff for cause from the Zoning Board of Appeals were unjustified.

  1. <u>The appropriate standard of review is "arbitrary and capricious."</u>

The Supreme Judicial Court has stated, "the proper approach in considering the appropriate scope of review [under M.G.L. c. 249 § 4,] is to

5

evaluate the nature of the action sought to be reviewed." <u>Boston Edison Co. v. Boston Redevelopment Auth.</u>, 374 Mass. 37, 49 (1977). In <u>Levy, et al. v. Acting Governor, et al.</u>, 436 Mass. 736, 746 (2002), the Court differentiated between the standard of review which applies when the removal of a public official is carried out by a) an appointing authority which has broad supervisory or managerial responsibility and control over the official's actions ("broad oversight"); versus b) an appointing authority whose supervisory or managerial interest in the official is limited ("limited oversight").

The statutory grant of authority provides the Selectmen with the right to remove Board of Appeals members "for cause." M.G.L. c. 40A §12. By definition, therefore, the Selectmen have "broad oversight" over the tenure of Board of Appeals members.

In cases such as this one, where the appointing authority has broad oversight, "whether under the circumstances it is sufficient to justify a removal, is for the [executive] to decide and his decision is final." <u>Id.</u>, (quoting <u>Ayers v. Hatch</u>, 175 Mass. 489, 492 (1900)). The decision of the removing authority "can be revised by this court [under certiorari review] only when there has been an arbitrary exercise of power." <u>Levy</u>, 436 Mass. at 746, (quoting <u>Dunn v. Mayor of Taunton</u>, 200 Mass. 252, 258 (1908)). Reversal of the Board of Selectmen's decision is warranted only if it *"lacks any rational explanation that reasonable persons might support."* <u>Doe v. Superintendent of Schools of Stoughton</u>, 437 Mass. 1, 6 (2002), (quoting <u>Cambridge v. Civil Serv. Comm'n</u>, 43 Mass.Ap.Ct. 300, 303 (1997)(emphasis added). For other examples of an executive having broad oversight, see <u>McSweeney v. Town Manager of Lexington</u>, 379 Mass. 794, 800 (1980) (removal of town engineer and superintendent of public works by town

6

manager for incompetence and inefficiency); Dunn v. Mayor of Taunton, 200 Mass. 252, 258 (1908) (mayor removed sewer commissioners for failure to comply with statute requiring imposition of sewer assessments); Gaw v. Ashley, 195 Mass. 173, 177 (1907) (removal of member of board of health by mayor); Ayers v. Hatch, 175 Mass. 489, 492 (1900) (removal of assessor by mayor).

Where there is limited oversight of the official by the appointing authority, then the public official, and perhaps others, have a greater interest in retention, so a higher standard may be more appropriate. See Boston Edison, 374 Mass. at 47. In Levy, 436 Mass. at 746-747, the court concluded that the Governor had limited or no executive oversight over the Massachusetts Turnpike Authority, created under M.G.L. c. 81A § 1, in the areas of fixing tolls (§ 10), issuing notes and bonds (§ 5(g)), and carrying out corporate policy (§ 4(s)), since the Legislature did not explicitly grant oversight by the Governor under those sections as it did in other areas (such as § 16). The court argued that since the Authority acts as an independent corporate body, and "because the Governor has no broad power of oversight of the Authority here, the "substantial evidence" test should be applied." Id., at 748. Thus, "cause to remove a member [of the Authority] should be in the order of malfeasance, misfeasance, or willful neglect of duty, the standard of removal applicable to comparable independent authorities." Id., at 749.

Here, the Board of Appeals is not an "independent corporate body." It has no power to set fees or raise revenues, appropriate funds, or to draft or revise zoning bylaws. The Board of Selectmen does have a supervisory, managerial, and proprietary interest in the Zoning Board of Appeals. M.G.L. c. 40A § 12 explicitly grants the "appointing authority" the right to appoint and remove for

cause any member of the Zoning Board of Appeals. Decisions of the Zoning Board of Appeals can be appealed by "[a]ny person aggrieved..." M.G.L. c.40A §17. In fact, the Board of Selectmen, or any of its individual members, have standing to appeal ZBA decisions. Id. Decisions by Zoning Boards of Appeals frequently result in litigation and can result in the Town of Kingston having to defend against the Zoning Board's actions. The Zoning Board of Appeals' decisions affect public and private property, property values, public health and safety and the overall quality of life within Kingston. These matters certainly fall within the purview of the Board of Selectmen. Moreover, the Board of Appeals operates in areas of interest shared by other governing bodies subordinate to the Selectmen, such as the Conservation Commission, the Planning Board, and the Board of Health. In contrast, in Levy, some of the Turnpike Authority's functions fell outside the purview of the Commonwealth, (for example, the bonds issued by the Authority are not a debt of the Commonwealth), and the Authority functioned as an independent corporate body.

The Zoning Board of Appeals' decisions directly affect the Town of Kingston and its Board of Selectmen in a multitude of ways. The supervisory, managerial and proprietary interest in decisions of the Zoning Board of Appeals is greater for the government of the Town of Kingston and its residents than that for decisions of the Authority by the Commonwealth, and thus the Board of Selectmen have a greater interest in supervision over the Zoning Board of Appeals. It follows that the Board of Selectmen are able to remove for cause any member as long as the reasons for removal are not arbitrary or capricious.

    2.    <u>Plaintiff cannot prevail on her violation of attendance policy claim.</u>

8

The Plaintiff claims that she was not allowed to introduce evidence concerning the number of missed meetings by other elected officials and appointed officials at the "for cause" hearing on August 24, 2004. See Plaintiff's Complaint ¶¶ 33, 35, and 40. The plaintiff cannot show that she has a likelihood of success on the merits of her violation of attendance policy claim. "[S]omething less" than a full evidentiary hearing is sufficient prior to adverse administrative action. Loudermill, at 545, (citing Mathews v. Eldridge, 424 U.S. 319 (1976)). Plaintiff, through counsel, was able at the "for cause" hearing on August 24, 2004 to put the Board on notice of other missed meetings of other public officials. See Plaintiff's Complaint ¶40. Plaintiff cannot show that the Board of Selectmen was arbitrary or capricious in determining that Plaintiff's absences warranted removal for cause.

Further, if Plaintiff is proffering this claim to show bias on the part of Defendants, Plaintiff cannot prevail because due process does not "require the state to provide an impartial decisionmaker at the pretermination hearing." Cronin v. Town of Amesbury, 895 F.Supp. 375, 387 (D.Mass 1995).

    3.    <u>Plaintiff's free speech claim has no likelihood of success.</u>

Here, a fact bound inquiry arises – the Board of Selectmen state they removed the Plaintiff for cause, whereas Plaintiff claims she was removed on speech-related grounds. See Stella v. Kelley, 63 F.3d 71, 77 (1st Cir. 1995). The facts as alleged in Plaintiff's Complaint and Memorandum in Support of Preliminary Injunction are insufficient to grant a preliminary injunction. The Plaintiff may be awarded damages at trial under her First Amendment claim (thus defeating the required showing of irreparable harm). However, the Plaintiff has no likelihood of success on the merits of her First Amendment claim.

According to the Plaintiff, she was removed for cause based on a vote she participated in during the July 7, 2004 meeting of the Zoning Board of Appeals. See Plaintiff's Complaint, ¶¶ 13-19. The Plaintiff concedes that the vote concerned a "non-controversial special permit." See Plaintiff's Complaint, ¶ 13. Accordingly, the Plaintiff concedes that the *content* of her speech was immaterial to the Selectmen's decision to remove her. On that date, the Zoning Board of Appeals voted with only three members, including the Plaintiff. This is a *procedural* violation by the Plaintiff of the Zoning Bylaws of the Town of Kingston, which require a vote by four members, and therefore regards her competency rather than her right to free expression. See Plaintiff's Complaint, ¶ 17. See Mullin v. Town of Fairhaven, 284 F.3d 31, 41 (1st Cir. 2002) ("Balancing the First Amendment interests of the plaintiff here against the Town's countervailing interests in operational efficiency and enforcement of its bylaws, we conclude that the Board's actions ... to bring the Commission into compliance with the Town bylaws, did not abridge any First Amendment protections.") Plaintiff cannot show that she has a likelihood of succeeding on the merits of her free speech claim.

The First Circuit Court of Appeals has extended First Amendment protection to votes on "controversial public issues" cast by "a member of a public agency or board." Miller v. Town of Hull, 878 F.2d 523, 532 (1st Cir. 1989) ("There can be no more definite expression of opinion than by voting on a controversial public issue."); see also Stella v. Kelly, 63 F.3d at 75-76. This protection is far from absolute, however. In their capacity as public officials voting on matters of public concern, plaintiffs retain First Amendment protection "so long as [their] speech does not unduly impede the government's interest ... in the efficient

10

performance of the public service it delivers through" its appointed officials. O'Connor v. Steeves, 994 F.2d 905, 912 (1st Cir. 1993). Accordingly, to determine the scope of First Amendment free speech protections applicable to public officials, the Court has employed a three-part test extracted largely from two Supreme Court opinions, Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977), and Pickering v. Bd. of Educ., 391 U.S. 563 (1968). See Tang v. R.I. Dep't of Elderly Affairs, 163 F.3d 7, 12 (1st Cir. 1998) (setting forth three-part test); O'Connor, 994 F.2d at 912-13 (same).

First, the Court must determine whether the speech at issue involves "matters of public concern." Connick v. Myers, 461 U.S. 138, 147-148 (1983). If it does not, then its First Amendment value is low, and a "federal court is not the appropriate forum in which to review the wisdom" of internal decisions arising therefrom. Id. at 147. Second, if the speech does pertain to matters of public concern, the court must, under the Supreme Court's decision in Pickering, balance the strength of plaintiffs' and the public's First Amendment interests against "the strength of the countervailing governmental interest in promoting efficient performance of the public service the government agency or entity must provide through" its public officials. O'Connor, 994 F.2d at 912 (citing Pickering, 391 U.S. at 568). Albeit not an exact science, the Pickering balancing test "is necessary in order to accommodate the dual role of the public employer as a provider of public services and as a government entity operating under the constraints of the First Amendment." Rankin v. McPherson, 483 U.S. 378 (1987)[1].

---

[1] In Mullin v. Town of Fairhaven, 284 F.3d 31, 37-38 n.7 (1st Cir. 2002), the Court noted, "We are aware that the Board, acting as an appointing body, is not a 'public employer' in a literal sense. We see no reason, however, why First

11

Because these first two prongs involve assessing whether plaintiffs' votes "'are of a character which the principles of the First Amendment ... protect,' these determinations are always subject to de novo review." O'Connor, 994 F.2d at 912 (quoting Connick, 461 U.S. at 150 n. 10).

Third, and finally, if First Amendment interests outweigh a legitimate government interest in curtailing the speech under the Pickering balancing test, plaintiffs must then show that the protected expression was a substantial or motivating factor in the decision to remove them from their posts on the Commission. See Mt. Health, 429 U.S. at 287. If plaintiffs can make their showing, the burden of persuasion shifts to defendants who must then prove by a preponderance of the evidence that plaintiffs would have been removed "even in the absence of the protected conduct." Id. Clearly erroneous review is appropriate on this third-step inquiry. Duffy v. Sarault, 892 F.2d 139, 145-146 (1st Cir. 1989).

4. Plaintiff's due process and 42 U.S.C. § 1983 claim

The Plaintiff cannot show that she has a likelihood of success on the merits for her procedural due process or 42 U.S.C. § 1983 claims. Where protected interests in employment are at stake, a pretermination hearing is required by the due process clause, but it "need not be elaborate." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546 (1985). The essential principal of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for a hearing appropriate to the nature of the case. Loudermill, 470 U.S. 532, 546.

---

Amendment jurisprudence in the public-employer context should not apply with equal force to the Board's removal of appointed, unpaid public officials."

In general, "something less" than a full evidentiary hearing is sufficient prior to adverse administrative action. Loudermill, at 545, (citing Mathews v. Eldridge, 424 U.S. 319 (1976)). The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. To require more than this prior to termination would intrude to an unwarranted extend to the government's interest in quickly removing an unsatisfactory employee. Loudermill, at 546. In such hearings, the rules of evidence do not apply, there is no right to cross-examination and normally, volunteer members of boards conduct such hearings. M.G.L. c. 40A § 12, does not specify the type and extent of the hearing required.

Moreover, due process does not "require the state to provide an impartial decisionmaker at the pretermination hearing." Cronin, 895 F.Supp. at 387, (citing Schaper v. City of Huntsville, 813 F.2d 709, 715 (5th Cir. 1987). See, Arnett v. Kennedy, 416 U.S. 134, 170 n.5 (1974) ("In most cases, the employee's supervisor is the official best informed about the 'cause' for termination. If disqualification is required on the ground that the responsible supervisor could not be wholly impartial, the removal procedure would become increasingly complex") (Powell, J. concurring).

A party contending "that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication" has a "difficult burden of persuasion to carry" because he must overcome "a presumption of honesty and integrity in those serving as adjudicators." Withrow v. Larkin, 421 U.S. 35, 47 (1975). See Wilson v. Brookline Housing Authority, 383 Mass. 878, 879 (1981) (bias on the part of members of appointing authority does not prevent authority from exercising

13

power to remove employee); <u>Mayor of Everett v. Superior Court</u>, 324 Mass. 144, 151 (1949) (officers enjoy no immunity from termination simply because removing authority biased or prejudiced). The state is obligated only to make available the means by which plaintiff can receive post-termination redress for any unlawful deprivations.

The Plaintiff received written notice of the charges levied against her by the Board of Selectmen on August 18, 2004. See Plaintiff's Complaint ¶ 32. The Board of Selectmen issued this letter one week before the "for cause" hearing on August 24, 2004. See Plaintiff's Complaint ¶ 38. The Plaintiff retained counsel after receiving notice on August 18, 2004. See Plaintiff's Complaint ¶ 33. The Plaintiff or plaintiff's counsel exercised the right to speak at the August 24, 2004 meeting. See Plaintiff's Complaint ¶ 38. The Plaintiff was allowed to respond to public comments, if there were any. See Plaintiff's Complaint ¶ 39. It follows that Plaintiff's procedural due process rights were not violated. Further, Plaintiff has the burden of persuasion to show that the Defendant Mark Beaton was not acting with integrity as the adjudicator at the August 24, 2004 "for cause" hearing. Plaintiff has no likelihood of success on the merits of her due process or 42 U.S.C. § 1983 claims.

V.  <u>Conclusion</u>.

Wherefore, for all of the foregoing reasons, Defendants hereby request that this Court deny the Plaintiff's motion for a preliminary injunction.

                                          Respectfully submitted,
                                          The Defendants,
                                          By their attorneys,

                                          _____/s/Leonard H. Kesten_____
                                          Leonard H. Kesten, BBO #542042
                                          Thomas P. Campbell, BBO #564124
                                          Brody, Hardoon, Perkins & Kesten, LLP
                                          One Exeter Plaza, 12th Floor
                                          Boston, MA 02116
                                          (617) 880-7100

Dated: September 21, 2004