35.    Beaton then allowed Town Counsel, Mark Reich, to deviate from the express procedure and reply to the plaintiff's presentation to opine on the credibility of the plaintiff (allowing him to suggest she was lying about having the Kopelman & Paige opinion) and also to claim incredibly that the Kopelman & Paige opinion might not apply to Butler since she was an alternate member of the Appeals Board.    Reich's statement concerning the opinion not applying to Butler even though she was acting as a full member of the Appeals Board even drew criticism from selectman, DeMacedo. *Videotape of August 24, 2004 Selectmens' Meeting included as a Part of Record (argument of plaintiff's counsel).*

36.    After the public portion of the meeting was over, the defendant, Beaton, offered further testimony about statements which, Butler, allegedly made and were shown on a videotape which was not offered into evidence or displayed during the meeting. *Videotape of August 24, 2004 Selectmens' Meeting included as a Part of Record (argument of plaintiff's counsel).*

37.    At the conclusion of the meeting, the defendant, Beaton, requested a vote from the remaining membership of the Selectmen which voted to remove her without first finding of a violation of either of the charges.    *Videotape of August 24, 2004 Selectmens' Meeting included as a Part of Record (argument of plaintiff's counsel).*

38.   To date, there is no written decision and no meeting minutes.    The only record

of the proceedings on August 24, 2004 is the aforementioned videotape from August 24,

2004.

39.   This appeal followed.

## ARGUMENT

*THE PLAINTIFF, BUTLER IS ENTITLED TO PARTIAL JUDGMENT ON THE PLEADINGS SINCE HER REMOVAL WAS LEGALLY ERRONEOUS AND THE CONSEQUENCE OF AN ARBITRARY EXERCISE OF POWER BY THE KINGSTON BOARD OF SELECTMEN.*

## DISCUSSION

A.    The Nature of Review on Certiorari.

It is well-settled in Massachusetts that the function of certiorari review under

Mass. Gen. L. c. 249, §4, is to correct errors of law not otherwise subject to review,

where such errors are apparent on the record and adversely affect material rights of the

aggrieved individual.   See MacHenry v. Civil Service Com'n, 40 Mass.App.Ct. 632, 634

(1996).   Relief in the nature of certiorari is said to be warranted where a plaintiff

demonstrates errors that are so substantial and material that, if allowed to stand, they will

result in manifest injustice to a petitioner who is without any other available remedy.

Johnson Products, Inc. v. City Council of Medford, 353 Mass. 540, 541 n. 2 (1968).   The

plaintiff, Butler, claims that her case presents exactly these types of errors which are

otherwise non-reviewable.

16

The appropriate standard of judicial review on certiorari is determined according to the nature of the action sought to be reviewed, in this case the Kingston Selectmens' removal of an alternate member of the Appeals Board.     Massachusetts courts reviewing purported decisions by supervisory officials removing other public officials have identified at least two different standards of review the (1) arbitrary and capricious standard and (2) the "substantial evidence" test.     See Levy, et al. v. Acting Governor, et al., 436 Mass. 736, 767 N.E.2d 66 (2002) (involving legal challenge by members of MA Turnpike Authority to acting governor's attempt to remove them from authority). Which standard of review is to be implemented, according to the Supreme Judicial Court in Levy, and therefore what constitutes "cause" is determined in the context of the power of the [the Board of Appeals] to act in the circumstances . . ."     Id. at 749, 767 N.E.2d at 75.

The "arbitrary or capricious []standard" requires only that there be a rational basis for the decision.     Howe v. Health Facilities Appeals Board, 20 Mass.App.Ct.  531, 533, 534, 481 N.E. 2d 510, 513 (1985) quoting Attorney General v. Sheriff of Worcester County, 382 Mass. 57, 62, 413 N.E.2d 722 (1980).     The substantial evidence test, on the other hand, requires that person or entities findings be grounded upon "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'"     Id. (other citations omitted).     In Levy, the Supreme Judicial Court held that the two members of the Authority (which was independent of executive oversight) should only be removed where there was "cause" in the "order of malfeasance or willful neglect of duty."     Id.

Regardless of what standard of review is applied,[5] the plaintiff, Butler contends

---

[5] While the Zoning Board of Appeals is a board over which the Kingston Board of Selectmen have the right to "appoint" and the right to remove for "cause" as set forth in Gen. L. c. 40A, §12, once appointed, the

that her removal lacks any rational explanation that reasonable persons might support and therefore must be nullified by this Court.

B.    There is No Rational Basis for Removing Butler for Voting in Accordance with a Written Opinion of Town Counsel.

As is evident from the testimony and documentation in the record, the plaintiff, Janet Butler, was ostensibly firstly removed[6] by the Selectmen for her vote on July 7, 2004 on the Vallaincourt special permit.    According to the letter advising her of the charges, Butler "participated in" and "allowed a vote" after "being informed that the vote was not valid causing the petitioner to reapply."    There was not one scintilla of evidence in the record that (1) the vote was invalid, (2) that the petitioner, Vallaincourt, had to reapply or (3) that there was any causal connection between the two issues.    In fact, the only evidence was that Butler, an alternate member sitting as a full member *through no fault of her own*, was voting on July 7, 2004 in accordance with her good faith and proper interpretation of a written opinion of the Appeals Board's town counsel,

---

Zoning Board of Appeals, has statutory duties and responsibilities over which there is no evident continuing supervisory or managerial responsibility by the Selectmen.    In fact, the Supreme Judicial Court has also held that a zoning board of appeals, which acts as an appellate authority to administrative decisions of the building inspector/zoning officer and conducts public hearings on special permits, variances and site plan approvals all under Gen. L. c. 40A is performing "quasi-judicial" functions.    Walker v. Board of Appeals of Harwich, 388 Mass. 42, 50 fn.6, 445 N.E.2d 141, 150 (1983) (other citations omitted).    In another context (and a context believed applicable herein), the Zoning Board of Appeals, is granted broad quasi-judicial discretionary permit granting authority under the provisions of Gen. L. c. 40B, §§20-23 (the so-called "Comprehensive Permit" statute) to conduct public hearings into and render decisions on behalf of all of the local boards and commissions in a municipality concerning so-called "affordable housing" projects.    See Mass. Gen. L. c. 40B, §21 (the board of appeals authority to conduct hearings and issue comprehensive permits).    The individuals appointed to such Boards of Appeals must comport their conduct to strict state ethical laws which further regulate their conduct as municipal officials.    See Mass. Gen. L. c. 268, §23(b)

[6]    The Board of Selectmen never filed any decision with the Kingston Town Clerk or articulated the specific cause for removal during the hearing.    A public records request was served upon the Town of Kingston Board of Selectmen the day following the hearings and there has been no response from the Town of Kingston.

Kopelman & Paige, PC, directing the option of vote by the Appeals Board under the circumstances where there is no quorum and the matter cannot be ever continued to a date when there would be due to a lack of membership.[7]    The plaintiff's clear and convincing evidence was unmet by <u>any</u> countervailing evidence (other than the speculative personal opinion of the conflicted town's attorney, Mark Reich, Esq. who opined in obvious effort to placate and further the interests of the chairman that (1) Butler might not have had the memo containing the opinion and (2) that it might not apply to Butler since she was only an alternate member).    Selectman DeMacedo's reaction of bewilderment to Attorney Reich's statement as on the videotape was the only proper reaction to such absurdity.    Accordingly, there was never any rational basis for such a charge.


C.    There was No Rational Basis for Removing Butler for a Non-Existent Violation of the Attendance Policy.

---

[7] The Opinion of Town Counsel which is attached as Exhibit E which states in relevant part:

"There is some question as to whether a simple majority of the Board is a quorum in such a case, or whether four members are needed for a quorum.  However in my opinion the Board has no choice but to hold the hearing, vote, and file the decision with the clerk's office.  However, since you need four votes to grant the permit, the permit will be denied even if all three vote in favor."    Page 2, ¶2.

"In summary, when a Board is faced with a quorum problem . . . , it should:

1.    Continue the hearing or re-notice the hearing if there is time; or
2.    Seek a continuance from the applicant if there is insufficient time before the constructive approval deadline; or,
3.    If neither of the above can be accomplished, proceed with the hearing and vote in as close compliance with the law as possible, and file the decision with the clerk.    Page 3, ¶3.

On or about November 6, 1991, the Kingston Selectmen adopted a "Policy on

Attendance for Committees, Boards and Commissions Appointed by the Board of

Selectmen" which remains effective today and reads as follows:

Any appointed official who serves on a multiple member board or commission shall
attend all sessions of the board or commission *for the respective term of office to which
the person has been appointed.*    Officials who miss three meetings in a six month
period shall be reported to the Office of the Board of Selectmen, by the respective
chairman of the committee, and, after inquiry with the official, the Board of Selectmen
may either request the resignation of the official, or, remove the official from office for
failure to discharge the duties of office to which the official has been appointed.

Nothing in this policy shall be construed as to remove an official from office, *if in the
opinion of the Board of Selectmen, the reasons for absence have sufficient merit and
the official is expected to return to his/her duties*.

Attendance Policy (adopted November 6, 2001)(emphasis supplied) (***Exhibit B***).

The second charge against the plaintiff, Butler, on August 17, 2004, was that

"[y]ou have been absent three meetings of the ZBA in the ***last*** six months, in violation of

the Selectmen's policy on attendance for committee and board members."    ***See Exhibit***

***I.*** (emphasis supplied).    In fact, the plaintiff, was absent only twice in the last six

months preceding her being given notice of an alleged violation of the policy on July 28,

2004 and April 17, 2004.    A prior absence occurring on February 4, 2004 due to

illness, was outside six months prior to the issuance of the notice of violation issued by

the Selectmen.    Hence, there was no violation as charged.

Even if the Selectmen were to view that the plaintiff, Butler technically had three

absences within a six month period from February 4, 2004 to August 4, 2004 (July 28th,

April 7th and February 4th), the only fair reading of the plain language of the attendance

policy is that absences must be in the specific term in office currently being served and

not to a former term(s) in office.    Use of the phrase "respective term of office to which the person has been appointed" in the first sentence of the policy is specific, plain and unambiguous, and sets forth the overriding policy objective of requiring attendance during a "respective" term.    It cannot be fairly or logically interpreted to encompass absences in a prior term or terms in office.    See <u>Garrison v. Merced</u>, 33 Mass.App.Ct. 116 (1992) (where language is plain and unambiguous and its provisions should be interpreted according to their plain meaning).    A contrary interpretation could lead incomprehensibly and on a whim to the removal of a ten term official for three absences occurring five appointed terms before.    Since Butler missed only one meeting in the current term commencing June 1, 2004 on July 28, 2004 when she missed the meeting for business associated with her employment obligations no rational basis exists for her removal since there was no violation of the proscribed rules.

In fact, the defendant, Beaton, who had personally researched Butler's attendance (and determined that she missed 60% of meetings over his research term) and the remaining Selectmen knew before she was appointed to her new term in June 2004, that Butler had previously missed more than three meetings in a six month window in her prior term but this did not prevent the Selectmen from appointing her to a new full year term.    If it did not prevent her new appointment, one additional absence for sufficient employment related cause, with advance notice to her fellow Board members and good faith the expectation that there would be a five-member board present for the July 28, 2004 does not support under any view of the evidence a finding that the attendance policy was violated and/or trigger "cause" for removal.

21

Butler's removal, under the attendance policy, looks even more like an arbitrary, discriminatory exercise of power when compared to the only other two examples of alleged violations and how those circumstances were handled.    It is clear from an examination of the minutes of the August 17, 2004 Selectmens' meeting that the Selectmen made a conscious decision not to use three successive absences in the June 2004 meetings of the Appeals Board to remove fellow Board member, Ed Donnelly, who was reportedly ill.    Mr. Donnelly did not face the threat of removal or even inquiry about his illness despite the technical violation of the attendance policy all of which occurred during his specific term.[8]    Further, as appears from the meeting minutes of the June 29, 2004 Selectmens' meeting, the Selectmen also did not remove or even threaten to remove Sean O'Donnell, an appointed member of the Kingston Conservation Commission, who had missed six commission meetings, had been late for three others and further left early from other meetings, all in a six month window of a respective term, on the basis of school-related and scheduling conflict obligations.    *See Exhibit D.* (Mr. Kenney stated there are many Committees which have members that do not attend all meetings and [the Selectmen] should not make an example out of Mr. O'Donnell but should give him a chance to prove himself).

D.    The Hearing was Tainted by the Bias of its Chairman, Beaton, who Acting in Concert with the Other Selectmen Deprived the Plaintiff's of Her Due Process Rights.

In Massachusetts and in the United States, there is a general recognition that the "fundamental requisite of due process is an opportunity to be heard at a meaningful time and in a meaningful manner."    See In re: Lawrence J. Kenney, 399 Mass. 431, 435, 504

---

[8] Ed Donnelly was appointed to as a regular member to a full term of office which is three years.

N.E.2d 652, 655 (1987) (other citations omitted); also <u>Cleveland Board of Education v.</u> <u>Loudermill</u>, 470 U.S. 532, 105 S.Ct. 1487 (1985).    "The adequacy of process is determined by: (1) the nature of the private and public interests involved; (2) the risk of erroneous deprivation accruing under the procedures used by the state; and (3) the probable benefit of demanding additional procedural safeguards.  <u>Fitzgerald v. Town of</u> <u>Kingston</u>, 13 F.Supp 113, 123-124 (D.Mass. 1998) citing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

While in <u>Cleveland Board of Education v. Loudermill</u>, the Supreme Court held that the "formality and procedural requirements for hearings can vary given the importance of the interests involved and nature of the subsequent proceedings" and that "'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action", <u>Cleveland</u> at  546, 105 S.Ct. at 1496 (1985) (dismissal of public employee was consistent with due process where there was subsequent administrative review and judicial review), the simple right to speak in one's own defense to the Selectmen, the only process afforded to the plaintiff, Butler, was clearly inadequate and resulted in the deprivation of a meaningful opportunity to be heard in violation of her rights.

1.    There was overwhelming evidence of bias on the part of the defendant, Beaton, which prevented the fair consideration of the charges.

First, the plaintiff, Butler, claims that her that her right to speak in her own defense and have a meaningful opportunity to be heard was curtailed by the defendant, Beaton, who acting as chairman of the Selectmen, exhibited uninhibited bias and control

over the proceedings in furtherance of his personal agenda to remove the plaintiff, Butler, regardless of any defense she might offer.        Bias on the part of the defendant, Beaton, was a primary concern for the plaintiff, Butler, from the outset and she attempted to raise this issue at every stage of the proceedings prior to the decision to remove her.    *See Exhibit K (Letter dated August 18, 2004 to Town Administrator) and Videotape of the August 24, 2004 hearing*.

In Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed. 712 (1975), the Supreme Court, held that a "'fair trial in a fair tribunal is a basic requirement of due process.'" Id. at 46, quoting In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). This applies to administrative agencies which adjudicate as well as to courts." Id. at 47 citing Gibson v. Berryhill, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973). "Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.'" Id. quoting Murchison, supra, 349 U.S., at 136, 75 S.Ct., at 625; cf. Tumey v. Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927).

According to the Supreme Court in Withrow, "[i]n pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." Id. "Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him." Id. (footnotes omitted).[9]        Similarly, in Massachusetts, in Cronin v.

---

[9] Also, worthy of note however is that the Supreme Court does not view that in and of itself "the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication" because of a "presumption of honesty and integrity in those serving as adjudicators". Id. at 47.

Town of Amesbury, 895 F.Supp. 375, 387 (D.Mass 1995), the Supreme Judicial Court

held that where there was a full panoply of post-deprivation remedies available to a

former police chief under civil service statutes, due process does not "require the state to

provide an impartial decisionmaker at the *pretermination* hearing."    Cronin, at 387

(other citations omitted) (emphasis supplied).

      In the instant case; however, the defendant, Beaton, had singled out the plaintiff,

Butler, as early as June of 2004 when he intentionally mischaracterized her attendance

record.    Beaton claimed to have personally researched Butler's attendance records in

this regard.    *See Exhibits A & C*.    The defendant, Beaton, then called the plaintiff

and all the other members of the Appeals Board "not competent to sit on the important

matters" before the Board before seeking an opinion from Town Counsel, Kopelman &

Paige, as to whether the Selectmen could assume the functions of the Appeals Board.

*See Exhibit G.*    Beaton then demanded Butler and other members' resignation and if he

did not get them he stated "the next step" would be to hold a hearing to remove them and

this was even prior to charges being brought forth.    *See Exhibit G.*.    Beaton, receiving

only two resignations, then investigated and developed a list of potential charges against

the plaintiff, Butler, involving voting and attendance.    *See Exhibit H & I*.    The Board

of Selectmen, including Butler, elected not to bring charges against fellow member, Ed

Donnelly, involving absences although he also violated the attendance policy.    *See*

*Exhibit I*.    The defendant, Beaton, then was alleged by Butler, in writing, to have

threatened fellow Board members in order to coerce their resignations.    *See Exhibit K*

*(Letter from Butler's counsel accusing Beaton of coercion and bias)*.    Butler, after

initially being offered the right to cross-examine witnesses in writing, was denied this

right.    *See Videotape of August 24, 2004 Selectmen's meeting*.    Butler was further

denied the opportunity to learn of how the Board had handled past violations of its

attendance policy since those records could not be made available prior to the hearing or

how it intended to conduct the hearing in her case.    *See Exhibit M and Videotape of*

*August 24, 2004 Selectmen's meeting.*

At the commencement of the hearing, the defendant, Beaton, then used his

position (1) to curtail the plaintiff, Butler's, right to speak on her own behalf concerning

the fairness of the hearings, issues of bias and concerning comparative attendance issues

in Kingston with other elected and appointed boards, (2) to attempt to curtail the

plaintiff's right to respond to public statements which would be accepted at the hearing

(but was asked by fellow board members to reconsider), (3) to allow town counsel to act

as counsel for the Selectmen and as prosecutor and to opine on the veracity of the charges

and that they were grounds for removal, (4) to allow town counsel to inappropriately (and

in an unscheduled rebuttal) to question the credibility of the plaintiff's possession of an

opinion of town counsel and its applicability to the proceedings, (5) to give testimony to

distinguish other attendance situations involving Sean O'Donnell and on statements

which he alleged were contained on a videotape not included in the record, (6) to allow

consideration of absences outside the scope of six months and into a prior term of office,

and (7) to conduct a vote on removal without any prior adjudication as to whether either

of the charges against the plaintiff, Butler, were warranted by the evidence.    After the

meeting had concluded, the defendant, Beaton, is also alleged to have said that the

plaintiff, Butler, was also removed due to a conflict of interest.    *See Verified Complaint*

*at ¶ 44*.    Twice during the hearing, fellow Selectmen, Ollie DeMacedo, himself

26

questioned the fairness of the meeting and the propriety of town counsel's opinion concerning the written opinion of counsel relied upon by Butler.    Beaton, on his own, indicated that if the plaintiff, Butler, did not think that the meeting was fair she could take the issue up in Court.    ***Videotape of August 24, 2004 Selectmen's meeting***

All of the foregoing conduct and circumstances can yield only one conclusion that the defendant, Beaton, the chairman, was so intent on removing the plaintiff, Butler, that it was inconsequential that there was any rational basis for the charges against her. Beaton's presence during the hearing process and conduct also so tainted the hearing, that there could be no other conclusion other than to remove, Butler, even in the absence of evidence of any violation of the charges.    Apparently, selectman, Richard Kenney, was the only one who understood that the potential for the appearance of a conflict of interest warranted stepping aside from the matter.    Clearly also, had not there been a video camera present to record the events, there is little doubt that the plaintiff, Butler, would be foreclosed from presenting this evidence since the bias in the conduct of the hearing would not be apparent from the ordinary meeting minutes.

2.    Although in general "something less' than a full evidentiary hearing is sufficient prior to adverse administrative action", in this case, it effectuated a deprivation of due process.

In the instant case, the record (under normal processes of certiorari review) on appeal, is ordinarily limited by what the Selectmen's chairman allows to be included in it. Cross-examining adverse witnesses and persons who investigated the charges was absolutely essential to challenge the source of the information and the grounds, if at all, supporting a finding that the plaintiff, Butler, had violated the charges against her.    For

example, had such an examination been allowed of town counsel, it would have revealed that he had no personal knowledge as to whether the plaintiff, Butler, possessed his law firm's opinion and that the opinion could be fairly read to have authorized the vote.   In addition, unlike in <u>Cronin</u> cited above, there was no other remedy available to the plaintiff, Butler, in which an adversarial process would enable the ability to bring out evidence of bias or non-violations of the attendance policy.

3.   The plaintiff, Butler, has a legitimate basis to bring her due process claims given the loss of her position on the Appeals Board and the damage to her reputation in the community.

"In analyzing a claimed denial of procedural due process, the court must [] determine whether the plaintiff has a constitutionally protected interest."   <u>Cronin</u>, supra, at 383.   The plaintiff, Butler, contends she has two constitutionally protected interests in her appointed position and in her reputation.

First, because she can only be dismissed for "cause" pursuant to Mass.Gen .L. c. 40A, §12, Butler has a protected property interest in her office.   Also in <u>Stella v. Kelley</u>, the First Circuit Court of Appeals, also opined that appointed officials should not be treated any differently from elected officials in terms of the constitutional rights afforded to each.     <u>Stella v. Kelley</u>, 63 F.3rd 71, 76 (1995).

Second, Butler has a liberty interest in her reputation which implicates Fourteenth Amendment safeguards.    Damage to one's reputation is not "by itself sufficient to invoke the procedural protection of the Due Process Clause," although loss of reputation, coupled with some other tangible element, may rise to the level of a protectible liberty interest. <u>Cronin</u>, supra, at 383-384 citing <u>Paul v. Davis</u>, 424 U.S. 693, 701, 96 S.Ct.

28

1155, 1160-61, 47 L.Ed.2d 405 (1976); see <u>Roth</u>, 408 U.S. at 573, 92 S.Ct. at 2707 (

[G]overnment employee's liberty interest would be implicated if he were dismissed based

on charges that imposed on him a stigma or other disability that foreclosed his freedom to

take advantage of other employment opportunities.); See, e.g., <u>Palmer v. City of</u>

<u>Monticello</u>, 31 F.3d 1499, 1503 (10th Cir.1994) (to establish claim of deprivation of

liberty interest, plaintiff must prove "termination based on a publicized charge of

sufficient opprobrium that would make plaintiff an unlikely candidate" for employment).

"'While defamation by a governmental official, standing alone, does not work a

deprivation of liberty protected by the Fourteenth Amendment, governmental action

altering a right or status previously held under state law 'combined with the injury

resulting from the defamation, justifie[s] the invocation of procedural safeguards.'" <u>Id.</u>

quoting <u>Rodriguez de Quinonez v. Perez</u>, 596 F.2d 486, 489 (1st Cir.1989), citing <u>Paul v.</u>

<u>Davis</u>, 424 U.S. 693, 708-09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976).

According to <u>Cronin</u>, "[t]he First Circuit has adopted the "stigma-plus" test:

"To establish a liberty interest sufficient to implicate fourteenth amendment safeguards,

the individual must be not only stigmatized, but also stigmatized in connection with a

denial of a right or status previously recognized under state law."   <u>Id.</u>    Since the

plaintiff, Butler, was dismissed from her appointed position based on charges of having

acted unlawfully and having violated an attendance policy, she like, Cronin, was removed

for charges which she alleges have stigmatize her and affected her ability to serve in

other appointed positions.    Accordingly, under the so-called stigma-plus test, Butler has

presented evidence to establish a protected liberty interest in her reputation.

4.    There is no adequate post-deprivation remedy available to Butler.

When a plaintiff alleges violations of procedural due process and asserts those violations are cognizable under [42 U.S.C.] section 1983, the existence of state remedies becomes highly relevant."    Fitzgerald v. Town of Kingston, supra, at 125 (1998) (citing Amsden v. Moran, 904 F.2d 748, 755 (1990)).    In general, a plaintiff, such as Butler, will not succeed in procedural due process claim unless he or she can show that the state failed to provide an adequate post-deprivation remedy.    See Lowe v. Scott, 959 F.2d 323, 340-341 (1st Cir. 1992).    The plaintiff, Janet Butler, asserts that the only available remedy to her was to challenge the action of the Selectmen removing her is through an action in the nature of certiorari which she has asserted.    See Mass. Gen. L. c. 249, §4.    Unfortunately there are so many inherent limitations in this remedy that, under the circumstances of this case, it is an inadequate, incomplete and ineffective remedy for her.

To illustrate the limitations of this remedy, one need not look further than what the Supreme Judicial Court has stated about a certiorari action and observe the limited procedural rights afforded to plaintiffs bringing said action.    Firstly, and as referenced in other sections of this memorandum, the standard of review may varies according to the nature of the action for which review is sought. See Fafard v. Conservation Commission of Reading, 41 Mass.App.Ct. 565, 567-568 (1996) (citing Forsyth Sch. for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 217, 534 N.E.2d 773 (1989);  T.D.J. Dev. Corp. v. Conservation Commn. of N. Andover, 36 Mass.App.Ct.

124, 128, 629 N.E.2d 328 (1994)).    The varying standards to be applied are a source of constant dispute given "procedural technicalities and complexities surrounding its proper use."    *A. Cella*, Administrative Law and Practice, Mass. Prac. Ser. §1917 (other citations omitted).    Second, since it is likely but not certain that this Court will review the decision of the Board of Selectmen under the so-called "arbitrary and capricious" standard of review and therefore only look to see whether the decision of the Board of Selectmen was "reasonable" and/or authorized by Gen. L. c. 40A.    Typically, in such cases, a Board is entitled to all rational presumptions in favor of its decision and there is a great deal of judicial deference to its actions.    See <u>Fafard</u> at 572 <u>citing National Amusements, Inc. v. Boston</u>, 29 Mass.App.Ct. at 305, 560 N.E.2d 138; <u>Hamel v. Board of Health of Edgartown</u>, 40 Mass.App.Ct. 420, 423, 664 N.E.2d 1199 (1996).    In addition with respect to the conduct of Board of Selectmen itself, the plaintiff, Janet Butler, believes that the limited scope of review on certiorari creates impermissible presumptions favor of the regularity and fairness of the methods of procedure.    See e.g. <u>Ott v. Board of Registration in Medicine</u>, 276 Mass. 566, 568, 177 N.E. 542 (1931)(under former writ of certiorari).    The flaws in the conduct of the Board of will not be apparent on the record of the proceedings before the Board of Selectmen because the defendant, Beaton, acting as chairman of the Board of Selectmen refused to allow any such argument or evidence concerning the same to be made on the record.    Third, certiorari actions, are typically resolved in Massachusetts through proceedings under a Standing Order of the Superior Court, Standing Order 1-96 which is limited to a review of the record of the proceedings before the Board.10    See Standing Order 1-96 attached hereto.

---

[10] Although there is a mechanism under the Standing Order to bring a motion to introduce evidence of procedural defects, the plaintiff, Butler, contends that said motions are still viewed with deference to the

All of the foregoing, is cited by some legal scholars in Massachusetts who believe that an action in the nature of certiorari "remains an inadequate, incomplete and ineffective means of obtaining judicial review of state administrative agency actions except in the most limited and restricted of circumstances."    *A. Cella*, Administrative Law and Practice, Mass. Prac. Ser. §1917 (other citations omitted) (copy attached).

In addition to the foregoing, the plaintiff, Janet M. Butler, asserts that the certiorari remedy, is inadequate remedy to address what she believes transpired here. The plaintiff's free speech rights, due process right to a meaningful opportunity to be heard by an unbiased Board of Selectmen, and reputation in her community has been obliterated by the conduct of the Board.    Since she elected to defend herself against allegations of misconduct, did so with uncontroverted evidence of innocence, and was still removed, substantively and procedurally there should be a remedy under which she can be compensated and awarded costs and fees.    Ms. Butler will also proceed under the state statute in an effort to overturn the action of the defendant, Board of Selectmen, but believes that there is an additional likelihood of success on the procedural and substantive due process claims she advanced.    Compare <u>Fitzgerald v. Town of Kingston</u>, 13  F.Supp. 119, 125 (1998) (plaintiff's failure to exercise his state law certiorari rights weighs against allowance of procedural due process claims).

## CONCLUSION

Since there was no rational basis for the charges under any view of the evidence, the decision to remove, Butler, was an arbitrary exercise of discretion and must be annulled.    Furthermore, based on the foregoing, her procedural due process rights

---

presumptive fairness of procedures employed.

under the Due Process clause were violated when she was removed by a biased group of Selectmen led by the defendant, Beaton, who controlled the process and limited the procedure to gain the desired results.     Accordingly, the decision of the Selectmen removing the plaintiff, Butler, must be annulled and she should be reinstated to the Appeals Board.

Respectfully Submitted
Janet M. Butler
By her Counsel,

DATED:  4-Oct-04

Robert W. Galvin, Esq.  (#561397)
Galvin & Galvin, SP
10 Enterprise Street, Ste. 3
Duxbury, MA  02332-3315
(781) 934-5678