# EXHIBIT F

F

TOWN OF KINGSTON
BOARD OF SELECTMEN

MINUTES
July 27, 2004

Chairman Mark S. Beaton opened the meeting of the Board of Selectmen held on July 297 2004 at 7:30 p.m. in Room 200 at the Town House, 26 Evergreen Street, Kingston. Present were Vice Chairman Paul M. Gallagher, Olavo B. DeMacedo, Joseph D. Kelleher, Richard E. Kenney and Town Administrator Kevin R. Donovan.

The Chairman announced the dates to note and the Open Forum. No one present requested to speak at Open Forum.

Roberta Medal of the Friends of the Kingston Heritage Center came forward and requested that the Board of Selectmen accept funds raised for the Heritage Center in the amount of $5,448.10 to be used for two change orders for repairs to the Adams Library currently underway. She also made a plea for donations to a fund to have Helen Husrt's name added to a founders list, stating that $825 was already raised and they were seeking funding in the amount of $125.00. Ms. Medal advised the Board that the "Friends" was one of the sponsors of the Town-wide yard sale scheduled for September 11, 2004 and that the Friends would be participating from the Adams Library.

Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was —

> VOTED:    To accept the donation in the amount of $5,448.10 for the Adams Library revonvation.

The Chairman announced that Town Counsel was requested to be present to answer questions from the Board of Selectmen and the Zoning Board of Appeals members regarding several issues that arose at the ZBA meeting on July 7, 2004. He stated that the questions would pertain to the ZBA members' responsibilities and would not involve any personal issues. Present from the Zoning Board was Gail Gleason, Joseph Palombo, Janet Butler, Mauro Mazzilli and Edward Donnelly.

Attorney Elizabeth Lane from Kopelman and Paige was present. Mr. Beaton advised Counsel that the Board would be appointing a new member and asked whether the new member could participate in the 40B hearings currently underway.

Attorney Lane advised the following:

- Any ZBA member not present for the entire hearing or presentation is prohibited from voting.
- It is possible to look at what stage the hearing is at to determine if not a great deal has been done, the applicant may be asked to start again and then the new member could participate.
- If a lot of sessions have been held and applicant has made presentation, new member may not participate, but applicant could withdraw without prejudice, a new hearing date announced, notice provided to the abutters and the hearing could begin again with the new member participating.

Mr. Beaton asked when would the Associate Member participate and what is the function of the Associate Member?

Attorney Lane advised the following:

- The function of the ZBA is a permitting board, which would be a quasi-judiciary and act like a court, with legislative powers that are limited to the conduct for meetings, and consultant fees to be charged.
- The ZBA Chairman may designate an Associate Member to sit on hearings when a regular member is absent or may have a conflict. In that case, the Associate Member would vote. Otherwise, unless designated to sit in on the hearing, the Associate Member would not participate or vote.
- Regarding Consultant selection, Kingston's ByLaw determines that the Board of Selectmen must approve the Consultant. MGL Chapter 40, Section 59G addresses the Consultant selection for Boards and Committees.

Attorney Lane answered questions from the Board of Selectmen and the Zoning Board members that were present.

Mr. Kenney asked if the Zoning Board could hear appeals from Planning Board decisions. Attorney Lane advised that the appeal of Planning Board decisions are made with the Court under the State mandated appeal process.

Mr. Mazzilli asked some specific questions regarding issues before the ZBA and Mr. Beaton advised that the purpose of the meeting was for general information and would not allow questions on specific matters.

Mr. Beaton stated that the ZBA has been under stress and the recent meeting that was televised did not put the Board in the best light. He suggested that the Board stick to issues, take a positive approach for the good of the Town and if any member feels they cannot contribute to the Board that they consider resigning.

Mr. Gallagher suggested taking number one under new business out of order. The Board agreed.

Mr. Beaton announced that the Board would interview the applicants for the ZBA vacancy. Janet Butler, Norman Libby, David Rose and John Haas each gave an overview of their qualifications and interest in filling the position.

Mr. Gallagher nominated Mr. Haas, and it was seconded by Mr. DeMacedo and Mr. Kenney nominated Mr. Rose, and it was seconded by Mr. Gallagher. Mr. Beaton, Mr. Kelleher, Mr. Gallagher and Mr. DeMacedo voted for Mr. Hass and Mr. Kenney voted for Mr. Rose.

The Board reviewed the Town Administrator's Report. Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was—

> VOTED:    To send a notice to all Departments, Boards and Committees about contacting Town Counsel and that it can only be done with authorization by the Town Administrator or the Chairman of the Board of Selectmen.

Mr. Beaton stated that the Board would be discussing the Financial Audit it its next meeting and advised that he wanted the Auditors, Collector, Treasurer, members of the Audit Committee and the Planning Board to meet with the Board. The Board unanimously voted to have the meeting on August 10th and request the above named to be present.

The Board reviewed the memo from Chief Fogg on the Gray's Beach Road parking matter. Mr. DeMacedo made a motion for No Parking on both sides of Gray's Beach Road. The Board discussed alternative parking for people that are shellfishing. Mr. Gallagher suggested waiting on the decision to look into it more. Mr. DeMacedo stated that the neighbors have spoken and they know what is needed and they want no parking on both sides of the road.   Mr. Gallagher stated that he was concerned with setting a precedent. Upon motion made and seconded, following a discussion and a 4 to 0 t  o 1 vote, it was—

> VOTED:    To post both sides of Gray's Beach Road as "No Parking".

Mr. Gallagher abstained from voting on the motion.

Mr. Gallagher stated that since parking would be prohibited on Gray's Beach Road, consideration should be give to those with shellfish licenses to park without cost in the parking lot for two hours before and after low tide.  Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was—

> VOTED:    To allow people with shellfish licenses to park in the lot at Gray's Beach without a parking permit for two hours before an after low tide.

Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was—

> VOTED:    To appoint the list of election workers as presented in the memo from the Town Clerk, and further;

> VOTED:    To accept the donation of a lawn tractor from Peter Opachinski for use at the athletic fields, and further;

> VOTED:    To enter into executive session[1] for the purpose of discussing collective bargaining and not return to public session.

Respectfully Submitted:

Nancy M. Howlett, Assistant to the
Town Administrator/Board of Selectmen

---

[1] The public session adjourned at 9:35 p.m. and the executive session adjourned at 9:45 p.m.

# EXHIBIT G

TOWN OF KINGSTON
BOARD OF SELECTMEN

MINUTES
August 10, 2004

Chairman Mark S. Beaton opened the meeting of the Board of Selectmen held on August 10, 2004 at 7:30 p.m. in Room 200 at the Town House, 26 Evergreen Street, Kingston.  Present were Vice Chairman Paul M. Gallagher, Olavo B. DeMacedo, Joseph D. Kelleher, Richard E. Kenney and Town Administrator Kevin R. Donovan.

The Chairman announced the dates to note and the Open Forum.  No one came forward to speak at Open Forum.

Mr. Beaton advised that he had several residents express concern for mini-motorized bikes being operated on Town streets.  He suggested that Chief Fogg provide the Board with information and options to regulate their use.

The Chairman read the notice for the Public Hearing on the application of Plymouth Gateway, LLC for an Earth Removal Permit.  Mr. Beaton stated that the Building Inspector had provided the Board with four options regarding the permit and suggested continuing the hearing until September 21st in order to allow the Planning Board to review.  Gary Darmon of Saxon Partners, the developer of the project requested that it not be postponed until September because the project was underway and the location of the earth to be removed was very important to the project.  Mr. DeMacedo asked several questions regarding wetlands, water and description of the area to be excavated.

Mr. Darmon advised that the Water Department had been contacted during the MEPA review and they had addressed all the Water Department's concerns and that the area consisted of a slope cut encompassing under 3 acres of land along the Plymouth/Kingston line.

Mike Daviano the Project Engineer for Cubellis Saivetz and Associates stated that 2,000 cubic yards had been removed when they learned that a permit would be needed from Kingston and that the cut would divert all the water toward Plymouth.

Mr. DeMacedo stated that he had no problem with the Planning Board looking at the plan but hoped it could be done quicker and asked Mr. Darmon if he would pay for a Consultant's review.  Mr. Darmon agreed to pay the cost.

Mr. Beaton stated that the Board could ask the Planning Board to put it on the fast track and hopefully have the Consultant's opinion by the Board's next meeting.

Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was—

> VOTED:    To continue the hearing until August 24, 2004 at 7:30 p.m.

Mr. Beaton invited Karen Roberts from Melanson Heath, the Town's independent Auditing firm to join the meeting. Ms. Roberts provided an overview of the audit performed on the guaranteed funds/Planning Board Consultant Accounts. She stated that she was pleased to report that the disparity in amounts was due to a record issues and that it would be easy to resolve. She further stated that the most complete set of records was kept by the Planning Board and that the Treasurer had failed to record all expenditures which resulted in the disparity and that in the future the accounts would be reconciled regularly. Ms. Roberts stated that the Planning Board did have a procedure manual and that they would follow that manual.

John LaBrache, Treasurer stated that he had been able to determine a number of accounts with funds to be closed to the General Fund and a number of accounts containing funds to be returned to the Developers with interest.

The Board reviewed the Town Administrator's report. Mr. DeMacedo noted that the 40B Legislation to count mobile homes as affordable housing units had failed again this year and expressed his concern. He suggested having Senator Murray and Representative O'Brien in to explain why it failed again.

Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was—

> VOTED:    To send a letter to Senator Murray and Representative O'Brien to request a full explanation of why the legislation failed to pass to have mobile homes count as affordable housing.

Mr. Kenney stated that he had spoken with Cynthia Walker, Real Estate Agent for the Post Office who advised that the Post Office would renew its interest in building a new Post Office in Kingston by issuing a new solicitation for sites.

Mr. Gallagher noted the $900,000 surplus funds left at the end of the fiscal year by the Regional School.

Mr. Beaton noted that the audio problem in the broadcast of the Selectmen's meetings was determined to be a problem with Adelphia and PAC TV and it was being addressed.

Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was—

> VOTED:    To accept the minutes of the public and executive session meetings on July 27, 2004.

The Board reviewed the request to increase the ambulance billing rates. Mr. Kenney made a motion to increase to 30% above the Medicare billing amount, and it was seconded by Mr. DeMacedo for discussion. Mr. Kelleher spoke in favor of the motion. Mr. DeMacedo stated that just because they could raise the rate didn't mean they should. He further stated that the cost is eventually passed along to the consumer and although it would not make much of a difference, he supported setting an example in this matter. Mr. Beaton stated that he also was opposed to the 30% markup. The motion to increase the billing by 30% was defeated by a 2 to 3 vote; Mr.

Kenney and Mr. Kelleher supported the motion and all other Selectmen did not support the motion.

Upon motion made and seconded, following a discussion and a 3 to 2 vote, it was—

VOTED:    To increase the rate of billing over the Medicare rate by 3%.

Mr. DeMacedo, Mr. Beaton and Mr. Gallagher supported the motion, Mr. Kenney and Mr. Kelleher did not support the motiom.

The Board reviewed the request to name a portion of state Route 44 as POW/MIA Memorial Highway and upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was—

VOTED:    To send a letter of support for the naming of a portion of state Route 44 as POW/MIA Memorial Highway, and further;

VOTED:    To sign the Warrant for the State Primary and post it in the usual places as indicated by the Town Clerk.

The Board reviewed the site plan for Crayon College on 24 Main Street. Mr. DeMacedo and Mr. Gallagher expressed concern for the access and turning radius indicated on the site plan and wanted concerns forwarded to the Planning Board.

Mr. Beaton stated that he wanted to discuss the Zoning Board of Appeals membership and suggested that all members of the Zoning Board resign and reapply for the positions. He suggested that the Board request the resignations and made a motion to that effect. He further stated that the Board was the appointing authority and that he took that position very seriously.

Mr. Gallagher seconded the motion for discussion. Mr. Beaton stated that when he sees an employee not measuring up he would suggest asking for them to step aside for the good of the Town. He stated that the Board of Selectmen had set up a joint meeting at which Town Counsel provided an overview of the role of the ZBA and it appeared that the ZBA members had not taken advantage of the information. He stated that they had recently held a hearing on the Fountain Knoll 40B project and only one member had come prepared and that the applicant's attorney had chastised the Board for not being prepared. Mr. Beaton stated that the current Board was not competent to sit on the import issues before it.

Mr. Kenney suggested not asking the whole Board to resign but to bring in those members that they had issue with for a hearing to remove them. Mr. Beaton stated that would be the next step if the members did not resign.

Mr. DeMacedo stated that if the Board has an issue with any of the members, they should be called in on an individual basis and be provided the opportunity to be heard. He requested an opinion from Counsel as to whether the Board of Selectmen could act as the Zoning Board.

Mr. Kelleher stated that the process started tonight and the 40B hearing before the ZBA could have a catastrophic outcome if not handled properly.

Mr. Gallagher stated that this was a critical time and decisions on the 40B applications will direct where the Town is going. He further stated that the Board had provided legal Counsel to the ZBA and despite the efforts all but one member was unprepared for the last meeting on the Fountain Knoll project.

On the motion to ask the ZBA members to resign and reapply for consideration of an appointment to the Zoning Board failed on a 2 to 3 vote. Mr. Beaton and Mr. Kelleher supported the motion, Mr. DeMacedo, Mr. Kenney and Mr. Gallagher did not support the motion.

Mr. DeMacedo suggested that while waiting for Counsel's opinion, the Board could begin to prepare discussion with some members of the ZBA.

Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was —

> VOTED:    To enter into executive session[1] to consider the purchase, exchange lease or value of real property and collective bargaining and not return to public session.

Respectfully submitted:

Nancy Howlett, Assistant to the
Town Administrator/Board of Selectmen

---

[1] The public session adjourned at 9:25 p.m. and the executive session adjourned at 9:45 p.m.

# EXHIBIT H

| | Term Expires | Reasons for Hearing | Absences |
|---|---|---|---|
| Edward M. Donnelly, 17 Winter St | 6-30-05 | 2 | 6 |
| Mauro Mazzilli, 13 Cedar Lane | 6-30-06 | 2 | 4 |
| John Haas, 96 Summer St. | 6-30-07 | | |
| Joseph M. Palombo, 2 Blueberry Hill Rd. | 6-30-07 | 1, 3 and 4 | 5 |
| Gale Gleason, 17 Foxworth Lane | 6-30-08 | 1, and 2 | 2 |
| Janet Butler, Alternate, 47 Grove St. | 6-30-05 | 1, 4 and 5 | 6 |

*NOTE: Individual letters will be tailored to actual charges*

August 17, 2004

Dear

This is to serve as official notification that in accordance with the provisions of M.G.L. chapter 40A, section 12, the Board of Selectmen will hold a public hearing to show cause as to why you should not be removed as a member of the Zoning Board of Appeals.

The reason for this action is that;

1) On July 7, 2004, you participated in and allowed a vote on a special permit to continue after being informed that the vote was not valid causing the petitioner to reapply.
2) On August 4, 2004, you failed to serve the Town by conducting your office in an informed and professional manner with respect to the applications before the Zoning Board of Appeals under the provisions of M.G.L. chapter 40B.
3) On August 7, 2004, you participated in a discussion on the engineering firm for Old Colony Commons after declaring that you would recuse yourself from all actions relating to this petition before the ZBA.
4) You have been absent   of the last        meetings of the ZBA, in violation of the Selectmen's policy on attendance for committee and board members and due to those absences or by your own action you have been unable to participate in the Chapter 40B hearings.
5) On May 5, 2004, you voted to deny a variance for a sign to identify a business at Cranberry Crossing when you are in the sign business, a conflict of interest.

The hearing will take place on Tuesday, August 24, 2004, in Room 200, at the Town House beginning at 8:00 p.m. You are entitled to be represented by counsel, at your expense, present evidence and cross-examine witnesses.

It is the intent of the Board of Selectmen to enter into Executive Session to discuss the charges as delineated against you in accordance with the provisions of M.G.L. chapter 39, section 23 b (2).

Very truly yours,

Kevin R. Donovan
Town Administrator

# EXHIBIT I

TOWN OF KINGSTON
BOARD OF SELECTMEN

MINUTES
August 17, 2004

Chairman Mark S. Beaton opened the meeting of the Board of Selectmen held on August 17, 2004 at 7:00 p.m. in Room 200 at the Town House, 26 Evergreen Street, Kingston. Present were Vice Chairman Paul M. Gallagher, Olavo B. DeMacedo, Joseph D. Kelleher, Richard E. Kenney and Town Administrator Kevin R. Donovan.

Mr. Beaton advised that since it was a special meeting, there would be no Open Forum.

Mr. Gallagher requested to take the matter involving motorized scooters out of order.

Mr. Beaton advised that Town Counsel had rendered an opinion that the Board could adopt regulations for the use of motorized scooters. Mr. Gallagher clarified the type of scooter that the Board was addressing by stating it was a newly developed small/downsized motorcycle that children as well as adults could ride. The Board reviewed the regulations adopted by the City of Taunton. Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was—

VOTED:    To adopt the regulations as presented in the City of Taunton Ordinance for the Town of Kingston.

Mr. Kenney stated that wanted to include some regulations concerning the noise from motorcycles. Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was—

VOTED:    To ask Chief Fogg for information and options regarding how to regulate motorcycles for the next agenda.

Mr. Beaton announced that the purpose of the special meeting was to address the membership of the Zoning Board of Appeals. He acknowledged the receipt of the resignation letters from John Haas and Gail Gleason and thanked them both for their cooperation and interest in being reappointed to the Committee.

Mr. Beaton further stated that any member of an appointed Committee may be removed for cause after a public hearing and proceeded to read the draft letter containing the reasons for action against the ZBA members which contained five reasons to conduct the public hearing. Mr. Beaton advised that each member would be addressed individually and the reasons would be voted upon by the Board.

Mr. Kelleher asked the Town Administrator if Town Counsel had reviewed the letter and the five reasons. Mr. Donovan advised that Town Counsel had advised that the reasons should be

defined for a show cause hearing and that cause was defined as what a reasonable and prudent person would determine.

The Board discussed the need for Town Counsel to be present at the show cause hearings and concurred that Town Counsel should be present.

The Board discussed the rights of the ZBA members to be represented by Counsel and whether the hearing was to be public or in executive session.

Mr. Donovan advised that the cost for Counsel, should individual members so choose to be represented by Counsel, would be the responsibility of the member and that the hearing under MGL Chapter 40A, Section 12 was required to hold the hearing in public.

Mr. DeMacedo expressed his concern for members that may be determined to be innocent of the charges to bear the expense of hiring Counsel and suggested the Town pay the legal fees for those found innocent of the charges.

Mr. Beaton stated that he was opposed and stated that the people involved are volunteers and should they be removed, there was no loss of income, job, license, etc. and this hearing is not a reason to pay for Counsel.

Mr. DeMacedo stated that the individuals are expected to defend themselves and in order to do that they may incur the expense of Counsel and if the charges are unfounded the Town should pay the bill.

Mr. Beaton stated that not all members would be charged with all five violations and as the meeting progressed, the Board would assign or determine which reasons to charge against each individual.

Mr. Kenney stated that he was opposed to the Town paying for lawyers for the ZBA members and Mr. Kelleher stated that if the individual was determined to be innocent, he was in favor of paying for their Counsel.

Mr. DeMacedo made a motion to indemnify the members of the ZBA who so choose to hire an Attorney if the individual is innocent. The motion was seconded for discussion.

Mr. Gallaher expressed his concern for the terminology used as being guilty or innocent and that the individuals were not charged with a criminal act and wanted to clarify the motion.

Mr. Beaton stated that this was simply a cause hearing and that the person could be determined to be innocent on the merits and could conceivably reapply for re-appointment.

Mr. DeMacedo stated that volunteers were serving for no money, had invested many hours of time and now are charged with allegations of which they need to defend themselves and the motion is to pay the legal costs of those individual who are found to be innocent of the allegations. The motion was defeated on a 2 to 3 vote; Mr. DeMacedo and Mr. Gallagher

supported the motion, Mr. Beaton, Mr. Kelleher and Mr. Kenney did not support the motion. (the vote was taken at 7:35 p.m.)

Note: The Board discussed the following reasons for conducting the show cause hearing and determined which charges if any would be brought against the individual members of the ZBA. The following is a list of charges that were discussed and will be identified by number in the discussion and votes of the Board.

1. On July 7, 2004, you participated in and allowed a vote on a special permit to continue after being informed that the vote was not valid causing the petitioner to reapply.
2. On July 28, 2004, you failed to serve the Town by conducting your office in an informed and professional manner with respect to the applications before the Zoning Board of Appeals under the provisions of MGL Chapter 40B.
3. On August 7, 2004, you participated in a discussion the engineering firm for Old Colony Commons after declaring that you would recuse yourself from all actions relating to this petition before the ZBA.
4. You have been absent for ___ of the last ___meetings of the ZBA, in violation of the Selectmen's policy on attendance for committee and board members and due to those absences or by your own action you have been unable to participate in the Chapter 40B hearings,
5. On May 5, 2004, you voted to deny a variance for a sign to identify a business at Cranberry Crossing when you are in the sign business, a conflict of interest.

Mr. Beaton stated that Mr. Donnelly was being charged with # 2 and #4. Mr. Kenney stated that he knew Mr. Donnelly had some medical problems and that his three absences in the past six months were due to being sick and recouperating.

Mr. Kelleher asked whether the Chairman of the ZBA had discussed the absences of the members. Mr. DeMacedo stated that the Selectmen's Policy states that a member who misses three meetings in six months could be removed and that if Mr. Donnelly was sick he should be given the benefit of the doubt and that he was only not prepared for one meeting.

Mr. Beaton stated that the Board had provided Town Counsel who advised the ZBA members of their role and responsibilities in the 40B hearings and that at the very next meeting, only one member was prepared, therefore the discussion could not be taken with any competence.

Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was—

VOTED:    To charge Mr. Donnelly with reason number 2.

Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was—

VOTED:    To charge Mauro Mazzilli with reason number 2.

The Board reviewed reasons 1, 3 and 4 in regards to ZBA member Joseph Palombo. The Board discussed Mr. Palombo's attendance record and his recusal to sit on the Fountain Knoll 40B

hearing and his absence at the commencement of the Old Colony Commons hearing. Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was —

VOTED:        To charge Mr. Palombo with reasons 1, 3 and 4.

Mr. DeMacedo stated that any member of any Board, if they feel they have a conflict, can recuse themselves from participation and that the determination of whether there is a conflict is an up to the individual and it should not be counted against them.

The Board reviewed reasons 1, 4 and 5 in regards to Alternate ZBA member Janet Butler. Mr. Kenney made a motion to charge Ms. Butler with 1, 3, and 5. Mr. DeMacedo requested information on reason 5. Mr. Beaton read the minutes of the May 5th meeting. Mr. DeMacedo stated that Ms. Butler would not get an advantage with a vote to deny the petitioner in this matter and therefore there would be not conflict and made a friendly amendment to eliminate reason #5.

Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was —

VOTED:        To charge Ms. Butler with reasons #1 and #4.

Mr. Beaton stated that the show cause hearing with take place at 8:00 p.m. on August 24, 2003.

Upon motion made and seconded, following a discussion and a 5 to 0 to 0 vote, it was —

VOTED:        To adjourn at 8:05 p.m.

Respectfully submitted:

Nancy M. Howlett, Assistant to the
Town Administrator/Board of Selectmen

# EXHIBIT J

# TOWN OF KINGSTON

*Office of the Board of Selectmen*
*Town House*
*26 Evergreen Street*
*Kingston, Massachusetts  02364*

Tel: 781-585-0500
Fax: 781-585-0534

*Board of Selectmen*
*Mark S. Beaton, Chairman*
*Paul M. Gallagher, Vice Chairman*
*Olavo B. DeMacedo*
*Joseph D. Kelleher*
*Richard E. Kenney*

*Town Administrator*
*Kevin R. Donovan*

August 17, 2004

Ms. Janet Butler
47 Grove Street
Kingston, MA 02364

Dear Ms. Butler:

This is to serve as official notification that in accordance with the provisions of M.G.L. chapter 40A, section 12, the Board of Selectmen will hold a public hearing to show cause as to why you should not be removed as a member of the Zoning Board of Appeals.

The reason for this action is that;

1) On July 7, 2004, you participated in and allowed a vote on a special permit to continue after being informed that the vote was not valid causing the petitioner to reapply.
2) You have been absent three meetings of the ZBA in the last six months, in violation of the Selectmen's policy on attendance for committee and board members.

The hearing will take place on Tuesday, August 24, 2004, in Room 200, at the Town House beginning at 8:00 p.m.  You are entitled to be represented by counsel, at your expense, present evidence and cross-examine witnesses.

Very truly yours,

Kevin R. Donovan
Town Administrator

# EXHIBIT K



# GALVIN
# & GALVIN

*Attorneys at Law*
   *A Sole Proprietorship*

10 ENTERPRISE STREET, SUITE 3
DUXBURY, MASSACHUSETTS 02332-3315
CORNERS OF ROUTES 3A & 139

Robert E. Galvin
   Robert W. Galvin
   Deirdre S. Weiler
   William J. Galvin (1898-1995)

August 18, 2004

## VIA FACSIMILE AND FIRST-CLASS MAIL

Kevin R. Donovan
Town Administrator
Town of Kingston
26 Evergreen Street
Kingston, Massachusetts   02364

**RE:**   **Show Cause Hearings involving Janet Butler and Joseph Palumbo**

Dear Mr. Donovan:

I have been asked to represent Janet Butler and Joseph Palumbo in connection with removal hearings which have been scheduled for next Tuesday, August 17, 2004 at 8:00PM.

The purpose of this letter is to express on behalf of my clients concerns with the anticipated hearings and the process by which it was determined to conduct such hearings.

First of all, I would be remiss if I did not inform you that I believe that certain of the members of the Board of Selectmen have engaged in conduct which violates Massachusetts conflict of interest law.    These very same members voted against approving a measure which would afford Ms. Butler and Mr. Palumbo counsel during these proceedings and established the procedure under which these proceedings are to take place.    More specifically, Selectmen Mark Beaton used a meeting which was represented to me as being an "educational-type meeting" to ask his own (and not the Board's) pre-prepared questions on behalf of the Zoning Board of Appeals to Town Counsel about hearing procedures.    As a municipal attorney, I can honestly say that I have never seen a more deliberate intention to embarrass (and discipline) a fellow municipal board and its board members in a more publicly misleading way.    Clearly, the Selectmen could have made available or allowed Town Counsel to meet with the Board

of Appeals' members during a public meeting and advise them on procedures and answer questions at a Board of Appeals' meeting. Mr. Beaton simply elected not to do so since it did not suit his personal vendetta against Appeals Board members.

I also have reason to believe that Mr. Beaton has stated to a Board member that if that Board member does not resign as he demanded - he will use the press to tarnish that person's reputation as he has previously done with other Board members. This type of intimidation of a municipal official is wholly inappropriate and illegal. What is more troubling is that these same officials are currently acting as a quasi-judicial authority in the 40B process and my client's believe that this action against them now is an effort to influence their thinking and conduct in these matters.

I am also advised that Richard Kenney, a member of the Board, who participated in the "educational-type" meeting and in last evening's events, is employed on a part-time basis by Sheriff McDonough. As you know, Mr. Palumbo is a candidate in the county-wide election for the Plymouth County Sheriff's position. Mr. Kenney's participation in any decision effecting Mr. Palumbo, during the time when his employer, Sheriff McDonough, is campaigning against my client, is a clear violation of the state ethics laws which prohibit his participation in any matter in which a reasonable person might conclude that he is likely to act as a result of kinship, rank, position or undue influence of any party or person. Mr. Kenney also appears to have a financial interest in the outcome of the this matter involving Mr. Palumbo because if he were to be removed – that fact would likely be used in any campaigning. Mr. Kenney appears also to be predisposed to remove Board members and has been heard to make the statement that the Board members in general are not "the brightest bulbs."

I further intend to call Mr. Beaton and Mr. Kenney as witnesses in this matter on the subjects referenced above as well as what I have gathered concerning Mr. Beaton's pre-hearing investigation of these matters. I believe that on this basis also it would be wholly inappropriate for them to sit as members of the Board which adjudicates their potential removal for cause.

I received your letters this morning concerning the so-called charges against Ms. Butler and Mr. Palumbo. I have also reviewed a transcript of the proceedings. It clearly appears that the Board discussed in open session in violation of the Open Meeting Law what the Selectmen "determined" was the Board members failures as zoning board members. Neither of my clients was notified properly in accordance with the law of the matter and none of the procedural requirements of Gen. L. c. 39, Section 23B. There are numerous witnesses to the fact that charges and the factual basis therefore was discussed and considered and that my clients were not given the notice that was required and that common decency would normally dictate.

It appears to me that the Board of Selectmen is questioning, in part, the propriety of their conduct as town officials during the progress of a hearing, in my opinion, the Board of Selectmen has the duty and obligation to indemnify them for legal expense incurred in

Kevin P.R. O'Donovan, Esq.
8/18/2004
Page 3 of 4

defending against said actions. See Gen. L. c. 258, §13.    My clients hereby advise you that they intend to bring a claim for indemnification concerning these matters.  I also question the wisdom of making such allegations since to do so could possibly play right into the hands of persons and entities appearing before the Board who might desire to use the results of any investigation against the Town of Kingston.    In addition, removal of Board members during the process of 40B hearings, could be viewed as intermeddling with the quasi-judicial functioning of the Board of Appeals.

On behalf of my clients, I am also requesting the following information:

(1)    The name, address and date of birth of any person whom the Board of Selectmen had investigating the charges against my clients.

(2)    A copy of any and all meeting minutes from any open meeting at which these charges have been discussed.

(3)    Any and all reports, complaints or other correspondence received by the Board of Selectmen concerning the allegations of impropriety.

(4)    A copy of the so-called policy against missing three meetings within six months including the effective date of the policy and proof of notice;

(5)    A listing of the meeting attendance records for members of each and every Board or Commission for the past 2 years;

(6)    The name and address of any person who has been prior to this instance been asked to report to the Board of Selectmen and explain absences at public meetings;

(7)    Any documents which mention, relate to or concern other charges against my clients which have been dismissed, dropped or otherwise not pursued by the Board of Selectmen, including without limitation, complaints and/or reports of alleged misconduct or malfeasance, meeting minutes at which these charges were considered, and any correspondence by or between the Board of Selectmen, its agents, servants, employees and my clients and/or any other person regarding any such allegations or the disposition of any such allegations.

     (I have attached a document which reflects that other charges were being considered by the Board of Selectmen on August 17, 2004).

(8)    Any and all notes prepared by any member of the Board of Selectmen which mention, relate to or concern any alleged misconduct or malfeasance by my client's, including, but not limited to Chairman Beaton's notes from the "educational-type meeting conducted in July 2004.";

(781) 934-5678   (781) 834-4224  (781) 837-1030 (FAX)

Kevin R. Donovan, Esq.
8/18/2004
Page 4 of 4

(9)     Any and all written ethics disclosures filed by any member of the Board of Selectmen with the Town Clerk of Kingston concerning matters involving the Zoning Board of Appeals or my clients; and,

(10)    Any and all documentation provided by counsel to the Town of Kingston for the educational-type hearing in July 2003, opinions provided in connection with conduct of hearings by the Board of Appeals concerning the L. Knife and Son project,  and the hearing conducted on August 17, 2004.

(11)    Copies of any posted or mailed notice of the Board of Selectmen Hearing held on August 17, 2004.

Kindly advise me when these materials and information will be available to me so that I may adequately prepare for the hearing.     I reserve the right to request a continuance of this hearing consistent with the timeliness of the Selectmen's response hereto.

I am also recommending to my clients that they provide a copy of this letter to the Plymouth County District Attorney's Office and also to the Massachusetts State Ethics Commission concerning the allegations of unethical behavior and open meeting law violations.

I look forward to hearing from you soon.

Very truly yours,

Robert W. Galvin

cc:     Janet Butler
        Joseph Palumbo
        Mark Rich, Esq.

# EXHIBIT L

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN
ANNE-MARIE HYLAND
JASON R. TALERMAN
GEORGE X. PUCCI
⎯⎯⎯⎯
EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT
KATHLEEN M. O'DONNELL
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS W. McENANEY
KATHARINE GOREE DOYLE
LAUREN F. GOLDBERG
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
ELIZABETH R. CORBO
MARIA C. ROTA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
JOSEPH S. FAIR
LAURA H. PAWLE
CAROLYN M. MURRAY
JACKIE COWIN
SARAH N. TURNER
JEFFREY T. BLAKE
R. ERIC SLAGLE

**KOPELMAN AND PAIGE, P. C.**

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735
⎯⎯⎯⎯
PITTSFIELD OFFICE
(413) 443-6100
⎯⎯⎯⎯
NORTHAMPTON OFFICE
(413) 585-8632
⎯⎯⎯⎯
WORCESTER OFFICE
(508) 752-0203

August 20, 2004

BY FACSIMILE – (781) 837-1030

Robert W. Galvin, Esq.
Galvin & Galvin
10 Enterprise Street, Suite 3
Duxbury, MA 02332

Re:    August 18, 2004, Records Request (Town of Kingston)

Dear Mr. Galvin:

The Town of Kingston has received your August 18, 2002, correspondence regarding certain public hearings scheduled for Tuesday, August 24, 2004. Although your request for records does not cite the Public Records Law, G.L. c.66, §10, such requests will be treated as public records requests pursuant to the statute.

The Town has records it believes are responsive to requests numbered 2 through 4, 6 through 8, and 10 through 11, as set forth in your August 18, 2004, letter. As a courtesy to your clients, the Town will waive the fees for search time (defined to include the time needed to locate, pull from the files, copy and reshelve or refile the records), and will only assess the fee for photocopies. See 950 CMR 32.03; 950 CMR 32.06(1)(c). It is estimated that there are approximately 48 pages of responsive records, at a cost of $.10 per page. 950 CMR 32.06(1)(a). Such records will be available on Monday morning at the office of the Town Administrator.

With regard to requests numbered 1 and 9, there are no records responsive to your requests. A record holder's duty to respond to requests for information extends only to records that are in existence and in his custody. See G.L. c.4, §7(26). There is no obligation to create a record in response to a public records request. G.L. c.66, §10(a). Thus, to the extent that the Town does not have any records responsive to the above-cited requests, the Town is not obligated under the Public Records Law to create such records.

KOPELMAN AND PAIGE, P.C.

Robert W. Galvin, Esq.
August 20, 2004
Page 2

Request number 5 seeks "A listing of the meeting attendance records for members of each and every Board or Commission for the past 2 years." There is no one record responsive to your request. As explained above, the Town does not have an obligation to create such a record. However, the Town believes that information responsive to your request may be gleaned from reviewing minutes of Town boards and committees. Whenever it is estimated that it will cost more than $10.00 to comply with a request for records, the Town is obligated to provide an estimate of the cost. 950 CMR 32.06(2). In this case, it is estimated that approximately 10 Town boards and committees meet several times a month, and that review and copying of the minutes of such meetings would take approximately five hours per board or committee, for a total of approximately 50 hours. It is further estimated that approximately 30 Town boards and committees meet less frequently, and that review and copying of the minutes of such meetings would take approximately two hours per board or committee, for a total of 60 hours. Thus, the total amount of time necessary to comply with request number 5 would be 110 hours. The lowest paid person in the office of the Town Administrator capable of locating, reviewing, and copying such records receives $20.00 per hour. The Town may assess such costs to the requester pursuant to 950 CMR 32.03 and 950 CMR 32.06(1)(c). It is further estimated that there will be approximately 1200 pages copied (two pages per month for a period of two years for 10 committees that meet frequently, one page per month for a period of two years for 30 committees that meet less frequently), at a cost of $.10 per page. Therefore, upon receipt by the Town Administrator's office of a check made out to the Town in the amount of $2,320.00, the Town Administrator will direct that the work to compile and copy the records responsive to request number 5 begin.

Please contact me if you have any further questions regarding this matter.

Very truly yours,

Mark R. Reich

MRR/LFG/lem
cc:    Board of Selectmen
229385/KING/0001

# EXHIBIT M

*M*

# GALVIN
# & GALVIN

*Attorneys at Law*
*A Sole Proprietorship*

10 ENTERPRISE STREET, SUITE 3
DUXBURY, MASSACHUSETTS 02332-3315
CORNERS OF ROUTES 3A & 139

Robert E. Galvin
     Robert W. Galvin
     Deirdre S. Weiler
     William J. Galvin (1898-1995)

August 23, 2004

## VIA FACSIMILE AND FIRST-CLASS MAIL

Mark R. Reich, Esq.
Kopelman & Paige, PC
31 St. James Avenue
Boston, Massachusetts   02116-4102

Kevin R. Donovan
Town Administrator
Town of Kingston
26 Evergreen Street
Kingston, Massachusetts   02364

RE:    **Show Cause Hearings involving Butler and Palombo**

Dear Attorney Reich and Mr. Donovan:

I am writing this letter to you this morning concerning several outstanding issues and also to reiterate my concern over the fundamental fairness of the proceedings involving tomorrow's "show cause" hearings involving the above-referenced individuals.

When I returned to my office this morning after being on trial on Thursday and Friday, I received a letter from Attorney Reich (apparently faxed Friday) explaining that some of the documentation which I requested would be available this morning at my cost and expense.      I also learned that there are no existing records which would allow one to evaluate the attendance of members of the other municipal boards.      Apparently, someone would have to examine the meeting minutes of every meeting of each of these boards to determine whether the meeting members were present (this includes the Board of Selectmen).      I have also been advised that there would be a research cost exceeding $2,000.00.

I contacted the Selectmen's Office since I could not reach Attorney Reich and learned at
10:45AM that this information which was copied was available.     Mr. Donovan was
also unavailable as he was attending a funeral for a former municipal employee.     The
purpose of my attempting to contact the both of you (in addition to arranging for the pick
up of the available material) was to find out whether if I ordered the materials referenced
in the letter whether I would have these records in time for tomorrow's hearing which the
Board of Selectmen has fixed.     In speaking with Nancy Howlett, I am advised that even
if I ordered them they would not be available for tomorrow.       I have accordingly asked
her to see what is available as it relates to the Board of Selectmen, Planning Board and
Board of Health at least from the being of the year to the present date.

When I did reach Mark Reich concerning other outstanding issues, my understanding is
that much of the issues relating to the procedure to be followed tomorrow is still
unresolved.      What I do understand is that Chairman Mark Beaton, notwithstanding the
allegations I have made concerning his obvious lack of partiality (in Board Meeting
Minutes dated August 10, 2004, Mr. Beaton stated that the current Board was "not
competent to sit on the important issues before it") and my desire to call him as a witness,
will not agree to step aside.     I understand that Mr. Kenney will not participate in the
hearing against Mr. Palumbo.     I also understand that the evidence is largely
documentary.

As of the drafting of this letter, I have been advised by Attorney Reich that Mr. Beaton
intends to refuse to answer any questions concerning his conduct or partiality, that the
procedural format for the proceedings is undetermined, that you do not know the names
and addresses of any witnesses, and do not know what documents will be relied upon to
substantiate the allegations.     As I understand it although I have the right to cross-
examine witnesses my ability to present witnesses as of yet is still undecided.     I believe
that all of the foregoing will result in the denial to my clients of substantive and
procedural due process and fairness.     It is impossible to properly prepare for a meeting
at which you have only a vague statement of charges.

I also wish to remind the Board that the document which I did see this morning included
a description of action taken against a Sean O'Donnell in connection with double the
amount of absences of which the Board of Appeals' members are accused and a number
of tardy appearances.     The Board did not similarly conduct a removal hearing in the
face of his unexplained absences nor did it remove him when he offered the same
reasonable excuses which Mr. Palombo and Ms. Butler offer.     This is precisely the
same type of disparate treatment which troubles me greatly with respect to these hearings.
As of the instant date, no one has even asked the members for any explanation.

Finally, as I am sure the Board of Selectmen is aware, conduct of votes (even if wrong)
and communications at hearings, are constitutionally protected speech.     The Board of
Selectmen's potential interference with the hearing process of meetings is misguided and
could potentially subject the Town of Kingston to costly litigation from a variety of
sources, including the members of the Board of Appeals.     See Stella v. Kelley, 63 F.3d

(C.A. 1st Cir 1995).

I trust that you understand my position in this regard.

Very truly yours,

Robert W. Galvin

cc:    Janet Butler
       Joseph Palombo

(781) 934-5678    (781) 834-4224    (781) 837-1030 (FAX)

## CERTIFICATE OF SERVICE

FILED
IN CLERKS OFFICE

I, Robert W. Galvin, hereby certify that I served one copy of the foregoing document:

2004 OCT -4  P 3: 41

### PLAINTIFF'S MOTION FOR LEAVE TO SUBMIT A BRIEF
### EXCEEDING 20 PAGES;

U.S. DISTRICT COURT
DISTRICT OF MASS.

### PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS;

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF, JANET BUTLER'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS with Exhibits; and

### CERTIFICATE OF SERVICE.

by  Federal Express overnight delivery, on October 4, 2004 to:

Leonard H. Kesten, Esq.
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA  02116

Signed under the penalties of perjury this 4th of October, 2004.

Robert W. Galvin, Esq.