UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JANET M. BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | NO. 04-11971-GAO |
| | ) | |
| MARK S. BEATON, Individually | ) | |
| and in his capacity as a Member of | ) | |
| the BOARD OF SELECTMEN OF | ) | |
| THE TOWN OF KINGSTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON PLAINTIFF'S
## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

October 29, 2004

DEIN, U.S.M.J.

## I.  INTRODUCTION

In this action, plaintiff Janet M. Butler ("Butler") is challenging the August 24,

2004 decision of the Board of Selectmen for the Town of Kingston, Massachusetts

("Board" or "Selectmen") to remove her for cause from her position as an alternate

member of the Kingston Zoning Board of Appeals ("ZBA").[1]  The defendants are the

Town of Kingston, the members of the Board and Mark S. Beaton ("Beaton"),

individually and in his capacity as Chairman of the Board of Selectmen.

---

[1]  Suit was originally filed in state court and later removed to this court pursuant to
28 U.S.C. §§ 1441(b) and 1446.

The matter is presently before the court on "Plaintiff's Motion for Partial Judgment on the Pleadings" (Docket No. 16) by which Butler is seeking a judgment annulling the decision of the Board in accordance with Count I of her Complaint, which states a claim for certiorari pursuant to Mass. Gen. Laws ch. 249, § 4.[2]  Because the parties have submitted materials outside the pleadings, the court finds, and the parties agree, that the plaintiff's motion should be treated as one for partial summary judgment and decided pursuant to Fed. R. Civ. P. 56.  See Fed. R. Civ. P. 12(c).

The Board of Selectmen asserted two grounds to support its decision to remove Butler from her position "for cause," namely (1) that she had participated in a vote which she knew to be invalid, and (2) that she had violated the Selectmen's Attendance Policy by missing three meetings in the last six months.  This court finds that these grounds are not supported by the record, and that the Board's decision, therefore, was arbitrary and capricious.  Consequently, and for the reasons set forth below, this court recommends to the District Judge to whom this case is assigned that the plaintiff's motion be ALLOWED.

---

[2]  The remaining counts of the complaint, which are not the subject of the instant motion, include claims for wrongful removal for cause (Count II), violation of the plaintiff's civil rights pursuant to 42 U.S.C. § 1983 (Count III), and defamation (Count IV).  This court expresses no opinion as to the merits of those claims.

## II.  STATEMENT OF FACTS

### Standard of Review of Record

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] . . . may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  A material fact is one that affects the outcome of the suit.  See id. at 248, 106 S. Ct. at 2510.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial.  See id. at 324, 106 S. Ct. at 2553.

In ruling on a motion for summary judgment, the court construes the evidence in the light most favorable to the non-movant, resolving all inferences in its favor, and determines whether the moving party is entitled to judgment as a matter of law.  See Saenger Org. v. Nationwide Ins. Assocs., 119 F.3d 55, 57 (1st Cir. 1997).  The relevant, undisputed facts, viewed in the light most favorable to the defendants, are recited below.

## Background

The ZBA consists of unpaid volunteers who are appointed by the Board pursuant to Mass. Gen. Laws ch. 40A, § 12.  See Def. Ex. 2 (videotape of June 1, 2004 Board meeting).[3]  At all relevant times, the Kingston ZBA was supposed to consist of five members and two alternates, although the second alternate position has been vacant for at least one year.  See Verified Complaint and Jury Demand (Docket No. 1) at ¶ 5; Plaintiff's Statement of Facts ("PF") included in Plaintiff's Memorandum of Law ("Pl. Mem.") (Docket No. 17) at ¶ 6.  The ZBA is responsible for, inter alia, granting site plan approvals and comprehensive permit applications relating to affordable housing projects governed by Mass. Gen. Laws ch. 40B.  See PF ¶ 2.  In order for a ZBA member (or alternate) to vote on a particular ch. 40B project, that member must be present for all meetings at which the project is discussed.  See Def. Ex. 6 (July 27, 2004 minutes of Board meeting) at 1.

## Butler's Attendance at ZBA Meetings

Butler was appointed as an alternate member of the ZBA for a one-year term in or around June, 2003.  See PF ¶¶ 1, 4.  When that term expired, the Board reappointed her at a meeting on June 1, 2004, amidst some controversy, to another one-year term as an alternate.  See generally Def. Ex. 1 (meeting minutes); Def. Ex. 2 (videotape).  Speci-

---

[3]  The defendants' exhibits ("Def. Ex.") are attached to the Defendants' Memorandum of Law ("Def. Mem.") (Docket No. 19), except for videotapes, which were submitted separately.

fically, at the meeting the Chairman of the Board, the defendant Beaton, expressed concern about Butler's prior attendance record, and emphasized the importance of ZBA members' attendance at upcoming hearings on ch. 40B proposals for affordable housing projects.  See id.  Beaton stated that he considered the ZBA the most important Board or Committee in town due to the impact that the ch. 40B projects were expected to have on Kingston's future development.  See Def. Ex. 2 (videotape).

Beaton advised the Board that Butler's attendance records showed that she had missed about one-third of the ZBA meetings over the last year.  See id.; see also Def. Ex. 1 at 4.  He proposed, by way of a motion, that the Board postpone a vote on Butler's appointment, as well as the appointment of a second ZBA member,[4] to see if other Kingston residents would come forward who "might give us a better representation as these 40Bs are going forward."  Def. Ex. 2; see also Def. Ex. 1 at 4.  Beaton emphasized that his criticisms did not concern the candidates' abilities, but rather the ZBA's capacity to handle the ch. 40B applications.  See id.  However, Beaton's motion to postpone the votes failed, and the Board voted unanimously to reappoint Butler to the ZBA for the one-year term beginning on June 1, 2004.  See id.

---

[4] At the June 1, 2004 Board meeting, Beaton expressed concern that a second member of the ZBA had abstained from deciding several matters in the prior term due to conflicts of interest. Again, Beaton's comments reflected his assessment that attendance and participation at hearings on ch. 40B projects would be critical to the town.  See Def. Ex. 1 at 4; Def. Ex. 2.

On June 15, 2004, Butler appeared at a Selectmen's meeting to dispute Beaton's portrayal of her attendance record.  See Def. Ex. 5 (meeting minutes) at 1.  Butler stated that her attendance had been reported inaccurately at the June 1 meeting.  See id.  She also asked why the Board had scrutinized the attendance of certain town boards but not others.  See id.  Beaton replied that he had obtained the attendance information "due to the importance of having a full [b]oard to hear the 40B applications."  Id.

In 2001, the Board had adopted a written "Policy on Attendance for Committees, Boards and Commissions Appointed by the Board of Selectmen" ("Attendance Policy").  See Def. Ex. 3.  The Policy reads:

> Any appointed official who serves on a multiple member board or commission <u>shall attend all sessions of the board or commission for the respective term of office to which the person has been appointed. Officials who miss three meetings in a six month period</u> shall be reported to the Office of the Board of Selectmen, by the respective chairman of the committee, and, after inquiry with the official, the Board of Selectmen may either request the resignation of the official, or, remove the official from office for failure to discharge the duties of office to which the official had been appointed.
>
> Nothing in this policy shall be construed as to remove an official from office, if in the opinion of the Board of Selectmen, that the reasons for absence have sufficient merit and the official is expected to return to his/her duties.

Id. (emphasis added).

The record demonstrates that Butler missed more than three ZBA meetings in a six-month period during the one-year term prior to her reappointment.  See Def. Ex. 4. Specifically, Butler apparently missed the meetings held on November 19, 2003,

December 3, 2003, February 4, 2004 and April 7, 2004.[5]  See id.  Nevertheless, as detailed above, she was reappointed on June 1, 2004 to another term.

On July 27, 2004, the Board held a meeting for ZBA members with Town Counsel, Attorney Elizabeth Lane of Kopelman & Paige, P.C.  See Def. Ex. 6 (meeting minutes).  The purpose of the meeting was to address the ZBA members' responsibilities and duties.  See id. at 1.  The Board apparently called the meeting in response to events that had occurred at a July 7, 2004 ZBA meeting concerning the Vallaincourt matter discussed infra.  See id.  The parties dispute the purpose and tone of the July 27th meeting — plaintiff characterizes it as "disciplinary in nature" and designed "to embarrass" the ZBA members, PF ¶ 16, while the defendants characterize it as educational.  See Def. Mem. at 5.  Nevertheless, it is undisputed that Attorney Lane emphasized the need for ZBA members to attend meetings because any member not present for all hearings or presentations on a ch. 40B project could not vote.  See Def. Ex. 6 at 1.

On the next day, July 28, 2004, there was a regularly scheduled meeting of the ZBA, which involved a ch. 40B applicant.  See PF ¶ 18; Def. Ex. 10 (videotape of August 24, 2004 hearing).  Butler missed the meeting due to a conflict with her personal business schedule, which required her to attend a meeting elsewhere.  See PF ¶ 18.  Butler had

---

[5]  The record indicates that Butler may have missed additional ZBA meetings on January 29, 2003, February 19, 2003 and April 2, 2003, apparently during an earlier term in office.  See Def. Ex. 4.

given advance notice of her intention to miss or arrive late for the ZBA meeting. <u>See</u> <u>id.</u>
This was her first absence in her new term. <u>See</u> Def. Ex. 4.

### The Vallaincourt Matter

Also at issue in this litigation is Butler's participation in a ZBA vote on an
application for a special permit (the "Vallaincourt matter"), which took place on July 7,
2004. Because two members of the ZBA could not vote due to their absence at earlier
meetings when the matter had been discussed, and a third member had recently resigned,
only two full-time ZBA members and Butler were available to vote.[6] <u>See</u> PF ¶¶ 10, 11.
Butler understood that four ZBA members were needed to constitute a quorum, but she
also believed that if the ZBA failed to vote on the Vallaincourt matter on July 7, the
permit might be constructively approved. <u>See</u> <u>id.</u> at ¶ 11. Under these circumstances,
Butler chose to vote, along with the two other participating ZBA members, to grant the
special permit, subject to certain express conditions. <u>See</u> <u>id.</u> at ¶ 12. In doing so, she
relied on a 1989 memorandum from the Town's attorneys containing recommendations
on avoiding constructive approval when procedural problems arise. <u>See</u> <u>id.</u> at ¶¶ 10-12;
Pl. Ex. E.[7] The memorandum specifically addressed the procedural circumstances that
occurred on July 7, and could be read as advising the ZBA to vote even if only three

---

[6] On July 27, the Board appointed a new full-time member to the ZBA in order to replace
the member who had resigned. <u>See</u> Def. Ex. 6 at 2.

[7] Plaintiff's exhibits ("Pl. Ex.") are included in "Exhibits in Support of Plaintiff, Janet
Butler's Motion for Partial Judgment on the Pleadings" (Docket No. 18).

members were able to participate.  See Pl. Ex. E.  Butler had obtained a copy of the
memorandum before the meeting.  See PF ¶ 10.

### The Removal Proceedings

By early August 2004, the Board was expressing significant concerns about the
ZBA's ability to handle the ch. 40B applications adequately.  During an August 10, 2004
Board meeting, Beaton made a motion in which he proposed that the Board ask all of the
ZBA members to resign and reapply for their positions.  See Def. Ex. 7 (meeting minutes)
at 3.  In the deliberations on the proposed motion, Beaton and another Board member
criticized the ZBA for being unprepared at a recent hearing on a ch. 40B project.  See id.
Additionally, Beaton remarked that the current ZBA was "not competent to sit on the
import[ant] issues before it."  Id.  The Board, however, declined to adopt Beaton's
motion.  See id.

Subsequently, on August 17, 2004, the Board held a special meeting to discuss,
among other things, the  ZBA membership.  See Def. Ex. 8 (meeting minutes).  Beaton
reported that two ZBA members had resigned, but had indicated an interest in reappoint-
ment.  See id. at 1.  Butler had not offered to resign.  See id.  Beaton also read a draft
letter containing reasons for conducting public hearings to determine whether to remove
each of the remaining ZBA members for cause, and the Board voted to bring specific
charges against each member.  See id. at 1-4.

In a letter dated August 17, 2004, the Town officially notified Butler of charges
against her and of the Board's intention to hold a public hearing, pursuant to Mass. Gen.

Laws ch. 40A, § 12, for Butler to show cause as to why she should not be removed from the ZBA ("Show Cause Hearing").  See Def. Ex. 9.  Specifically, the letter set forth the following reasons for the Board's action:

> 1) On July 7, 2004, you participated in and allowed a vote on a special permit to continue after being informed that the vote was not valid causing the petitioner to reapply.
> 2) You have been absent three meetings of the ZBA in the last six months, in violation of the Selectmen's policy on attendance for committee and board members.

Id.  The letter further advised Butler that she was entitled to be represented by counsel, at her expense, and that she had a right to present evidence and cross-examine witnesses. Id.

Prior to the Show Cause Hearing, Butler, through her attorney, challenged Beaton's impartiality and requested that he recuse himself from consideration of the charges against Butler.[8]  See PF ¶ 24; Pl. Ex. K at 2.  She also requested copies of various documents, including documents pertaining to attendance records of other town officials. See id.  In response, counsel for Kingston agreed to make certain records available, but informed Butler that the Town could only produce the attendance information she requested if she agreed to pay $2,320.00 for review and copying costs.[9]  See PF ¶ 25; Pl. Ex. L.  Counsel further informed Butler that Beaton would neither recuse himself nor

[8] In a letter dated August 18, 2004, Butler's attorney accused Beaton of having a "personal vendetta" against ZBA members, and of illegally using intimidation to force the resignation of ZBA members.  See Pl. Ex. K at 2.

[9] It appears that the attendance information Butler sought from the Town could not be produced prior to the Show Cause Hearing.  See PF ¶ 26.

agree to answer questions concerning his conduct or partiality, and that Butler would not be permitted to cross-examine witnesses or ask the Board members questions.  <u>See</u> PF ¶ 26.  He also notified Butler that the hearing procedures would be determined at the Show Cause Hearing.  <u>See</u> <u>id.</u>

The Show Cause Hearing took place before the Board on August 24, 2004.  <u>See</u> Def. Ex. 10 (videotape of hearing).  At the Hearing, the Town's counsel described the charges against Butler, and Butler's counsel, Attorney Galvin ("Galvin"), was allowed to respond.  <u>See</u> <u>id.</u>  Galvin objected to the Board's procedures as inadequate and unfair. <u>See</u> <u>id.</u>  He attempted to have Beaton recused from the matter due to bias, but this attempt was unsuccessful.  <u>See</u> <u>id.</u>  Galvin also disputed the Board's charge with respect to Butler's participation in the Vallaincourt matter by explaining the procedural circumstances involved, providing the Board with a copy of the memorandum on which Butler had relied in deciding to vote on the requested permit, and reading the relevant portion of the memorandum into the record.  <u>See</u> <u>id.</u>  In addition, Galvin challenged the accuracy and fairness of the Board's assertions regarding Butler's attendance record, and read into the record correspondence praising Butler's performance on the ZBA.  <u>See</u> <u>id.</u>  He was

not, however, permitted to present evidence regarding the absenteeism of others who served on town boards or to examine Board members. See id. At the conclusion of Galvin's presentation, the Board deliberated and, without making specific findings, voted to remove Butler from the ZBA in a non-unanimous vote. See id.

### III. DISCUSSION

In her claim for certiorari, Butler challenges both the substance of the Board's decision to remove her for cause and the sufficiency of the Board's procedures. Specifically, Butler asserts that the Board's decision to remove her from the ZBA was arbitrary and capricious, and that the Board deprived her of a constitutional right to procedural due process. As detailed below, this court concludes that the procedures afforded Butler were sufficient, but the decision was arbitrary and capricious. Therefore, this court recommends that the decision removing Butler be vacated.

### A.    Standard of Review of the Board's Decision

Mass. Gen. Laws ch. 249, § 4 "provides for review in the nature of certiorari for proceedings not otherwise reviewable." Forsyth Sch. for Dental Hygienists v. Bd. of Registration in Dentistry, 404 Mass. 211, 217, 534 N.E.2d 773, 776 (1989). "Under G.L. c. 249, § 4, the standard of review may vary according to the nature of the action for which review is sought." Id. See also Levy v. Acting Governor, 436 Mass. 736, 745-46, 767 N.E.2d 66, 73 (2002), aff'd, 358 F.3d 91 (1st Cir. 2004). This court finds, and the parties agree, that because the Board has "broad supervisory or managerial responsibility and control" over the ZBA, the proper standard of review in this case is whether the

Board's decision to remove Butler was "arbitrary and capricious."[10]  See Levy, 436 Mass. at 746, 767 N.E.2d at 73 ("Where traditional models of executive oversight are involved, the less strict 'arbitrary and capricious' standard of review should be applied."); McSweeney v. Town Manager of Lexington, 379 Mass. 794, 796, 401 N.E.2d 113, 115 (1980) (decision of town manager to remove plaintiff from his position as superintendent of public works and town engineer reviewed under an "arbitrary and capricious" standard).  "In such cases, if the cause assigned is a reasonable one, then, whether under the circumstances it is sufficient to justify a removal, is for the executive to decide and his decision is final."  Levy, 436 Mass. at 746, 767 N.E.2d at 73 (internal punctuation and citation omitted).  The decision of the removing authority "'can be revised by this court only when there has been an arbitrary exercise of power, and the cause alleged for the removal is unreasonable and in law insufficient.'"  McSweeney, 379 Mass. at 796, 401 N.E.2d at 115 (quoting Dunn v. Mayor of Taunton, 200 Mass. 252, 258, 86 N.E. 313, 315 (1908)).  In the instant case, "the cause assigned" by the Board is not supported by the record.  Therefore, this court is compelled to conclude that the Board's decision was arbitrary and capricious.

---

[10]  While in her memorandum (pp. 17-18) the plaintiff noted that the courts have applied at least two different standards of review in cases involving decisions to remove public officials, at oral argument she agreed that the "arbitrary and capricious" standard applies in the instant case.

**B.**     <u>**The Grounds Asserted by the Board**</u>

Although the Board did not make specific findings when it voted to remove Butler

for cause, the record demonstrates that the Board based its decision both on Butler's vote

on the Vallaincourt permit and on her alleged violation of the Board's Attendance Policy.

Neither of these grounds is supported by the record.

**1.**     <u>**The Vallaincourt Vote**</u>

While not formally waiving this argument, the defendants have not pursued their

claim that Butler's allegedly improper vote on the Vallaincourt permit constitutes "cause"

for her removal from the ZBA.  As the plaintiff correctly contends, there is nothing in the

record supporting the charge that Butler voted "after being informed that the vote was not

valid," nor is there anything to support the conclusion that Vallaincourt had to reapply for

a permit as a result of Butler's conduct.  <u>See</u> Def. Ex. 9.  Rather, the undisputed facts

establish that Butler followed Town counsel's advice to the best of her ability when faced

with a situation – a lack of a quorum – which existed through no fault of her own.

Moreover, nothing in the record suggests that Butler's reliance on the legal opinion was

inappropriate or unreasonable.  Accordingly, this court finds that the Board had no

rational basis for removing Butler from the ZBA due to her participation in the

Vallaincourt matter.

2.    **Excessive Absenteeism**

Butler's discharge for "cause" was also based on the charge that she was "absent three meetings of the ZBA in the last six months, in violation of the Selectmen's policy on attendance for committee and board members."  Def. Ex. 9.  The record does support the Board's assertion that attendance at ZBA meetings was critically important, even more so than for other committees, because a ZBA member's failure to attend even one meeting could preclude that member from participating in the project in any way.  Similarly, the record supports the Board's assertion that the ZBA's responsibilities on significant ch. 40B projects made attendance at the meetings even more important.  Finally, the record does seem to support the Board's contention that Butler's past attendance record was seriously deficient.[11]  Nevertheless, this court finds itself constrained to conclude that the Board's action based on Butler's attendance was arbitrary and capricious.  Butler simply did not commit the violation with which she had been charged — she did not violate the Attendance Policy.  Therefore, this is a situation where "the cause alleged for the removal is unreasonable . . . ."  McSweeney, 379 Mass. at 796, 401 N.E.2d at 115 (internal citation omitted).

---

[11]  While the record indicates that Butler disputed the accuracy of the Board's facts regarding her appearances at meetings, the details of her challenge are not clear from the record.

The Attendance Policy (Def. Ex. 3) requires appointed officials who serve on multiple member boards to "attend all sessions of the board . . . *for the respective term of office to which the person has been appointed*." (Emphasis added). The Policy then states that "[o]fficials who miss three meetings in a six month period shall be reported to the Office of the Board of Selectmen . . . and, after inquiry with the official, the Board of Selectmen may . . . remove the official from office . . . ." The plaintiff argues, and the court agrees, that the plain and unambiguous language of the Attendance Policy gives the Board discretion to remove an official from service only if the official's absences occurred during the current term of office, and not if the official's absences occurred in the prior term. See Warcewicz v. Dep't of Envtl. Prot., 410 Mass. 548, 550, 574 N.E.2d 364, 365 (1991) (words of an agency regulation must be given their usual and ordinary meaning). Because Butler only missed one ZBA meeting during her present term, she had not violated the Board's Attendance Policy at the time of her removal from office.[12]

"Ordinarily an agency's interpretation of its own rule is entitled to great weight." Finkelstein v. Bd. of Registration in Optometry, 370 Mass. 476, 478, 349 N.E.2d 346, 348 (1976). "However, this principle is one of deference, not abdication, and courts will not

---

[12] Not only does this reading of the Policy give credence to the clear language used, but it also is consistent with the Policy's intent. The Board, according to the Policy, may excuse the absences. Therefore, a reappointment following excessive absenteeism can reasonably be viewed as excusing any prior absences, especially where, as here, there is no indication that the expectation for future attendance at meetings varies from the requirements stated in the Policy.

hesitate to overrule agency interpretations of rules when those interpretations are arbitrary, unreasonable or inconsistent with the plain terms of the rule itself." Id. See also Warcewicz, 410 Mass. at 550, 574 N.E.2d at 366 (same); McDonald's Corp. v. Bd. of Selectmen of Randolph, 9 Mass. App. Ct. 830, 831, 399 N.E.2d 38, 40, 41 (1980) (annulling town board of selectmen decision where board incorrectly interpreted and applied town zoning by-law to support its reasons for denying a license, and trial court properly concluded that "the reasons advanced by the board were groundless or otherwise legally erroneous"). Here, the court finds that the Board arbitrarily construed and applied its Attendance Policy as to Butler.

The defendants argue that the Board's decision to remove Butler based on her attendance record was reasonable notwithstanding the language of the Attendance Policy. In particular, they argue that the Board expressed concern about Butler's attendance when her appointment came up for renewal on June 1, 2004. They also assert that the Board made every effort to raise the significance of Butler's and the other ZBA members' participation in ch. 40B hearings, and that Butler's absence from the July 28, 2004 ZBA meeting occurred only one day following town counsel's presentation addressing the importance of attending hearings. See Def. Mem. at 11-12.

Although the defendants' concerns regarding Butler's absenteeism were reasonable, particularly in light of the ch. 40B hearings, and potentially could have provided a rational basis upon which to remove Butler for cause, the stated basis for the defendants' decision was Butler's violation of the Attendance Policy. The Board never warned Butler

that one absence in the current term could result in her removal, or notified Butler of

charges against her other than those set forth in the August 17, 2004 letter. The Board

was required to advise Butler of the charges against her, and is therefore limited to the

charges asserted. See Cotnoir v. Univ. of Maine Sys., 35 F.3d 6, 11 (1st Cir. 1994)

(individual facing loss of protected interest, i.e., employment, must be provided "with

notice of the charges alleged against him and any proposed action the officials intend to

take, based on those charges"). A reviewing court is not free to simply disregard the

stated reason for a termination for cause and substitute its own analysis for that of the

Board. Accordingly, this court finds that the Board's decision to remove Butler from the

ZBA on the grounds that she violated the Attendance Policy was arbitrary and

capricious.[13]

## C.    Procedural Due Process

Butler also asserts that the defendants' actions deprived her of a constitutional

right to procedural due process. In particular, she argues that the procedures for

removing

---

[13]  The plaintiff argues that the Board's decision to remove Butler on the basis of her absenteeism was also arbitrary and capricious because the Board excused the poor attendance of another ZBA member, as well as the poor attendance of a member of the Kingston Conservation Commission. See Pl. Mem. at 22. Pursuant to the Attendance Policy, the Board retains discretion to excuse violations of the Policy, and, therefore, each case is to be treated individually. Moreover, in light of the requirement that ZBA members attend all hearings on a given project or they are precluded from voting, there is a rational basis for treating different boards differently. Therefore, in this court's view, these additional arguments are without merit.

her from the ZBA were deficient because (1) Butler had no right to cross-examine witnesses, (2) there is no adequate post-deprivation remedy, and (3) Beaton's bias prevented the Board from providing Butler with a fair hearing before an impartial decisionmaker.  See Pl. Mem. at 22-32.  As described more fully below, the court finds that the plaintiff received adequate due process protections.

Pursuant to the Fourteenth Amendment to the Constitution, "no state shall deprive any person of life, liberty or property without due process of law."  See Cotnoir, 35 F.3d at 10.  The defendants do not dispute that Butler's appointment to the ZBA constituted a property interest cognizable under the Fourteenth Amendment, see Def. Mem. at 12, and, consequently, this court will assume, arguendo, that such an interest exists.[14]  See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 576-78, 92 S. Ct. 2701, 2708-09, 33 L. Ed.2d 548 (1972) (discussing attributes of property interests protected by procedural due process); Cronin v. Town of Amesbury, 895 F. Supp. 375, 383 (D. Mass. 1995), aff'd, 81 F.3d 257 (1st Cir. 1996) (finding constitutionally protected property interest in continued employment where employee could only be dismissed for just cause under Massachusetts statutory law).  The only question remaining, therefore, is what process was due to Butler

---

[14]  In light of the defendants' agreement that Butler had a constitutionally protected property interest, this court will not address Butler's claim that her due process rights were triggered due to her "protected liberty interest in her reputation."  Pl. Mem. at 29.  Moreover, nothing in this decision is intended to reflect a ruling on the merits (or lack thereof) of plaintiff's claim that her reputation has been harmed and/or that she has been defamed.

before she could be finally removed from the ZBA.  See Cleveland Bd. of Educ. v.
Loudermill, 470 U.S. 532, 541, 105 S. Ct. 1487, 1493, 84 L. Ed.2d 494 (1985) (after it is
determined that the Due Process Clause applies, the question that remains is what process
is due).

Mass. Gen. Laws ch. 40A, § 12 authorizes the appointing authority, in this case
the Board, to remove any member of the ZBA for cause "upon written charges and after
public hearing."  Although the statute suggests that some formal process is necessary
prior to removal, "minimum [procedural] requirements [are] a matter of federal law, they
are not diminished by the fact that the State may have specified its own procedures that it
may deem adequate for determining the preconditions to adverse official action."  Vitek
v. Jones, 445 U.S. 480, 491, 100 S. Ct. 1254, 1263, 63 L. Ed.2d 552 (1980).  See also
Logan v. Zimmerman Brush Co., 455 U.S. 422, 432, 102 S. Ct. 1148, 1155, 71 L. Ed.2d
265 (1982) (same).

The Supreme Court "consistently has held that some form of hearing is required
before an individual is finally deprived of a property interest."  Mathews v. Eldridge, 424
U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed.2d 18 (1976).  See also Loudermill, 470 U.S.
at 542, 105 S. Ct. at 1493 (describing the opportunity for a hearing *before* deprivation of
a significant property right as the "root requirement" of the Due Process Clause).  This
does not mean, however, that the hearing must be elaborate.  See id. at 545, 105 S. Ct. at
1495.  Rather, due process is "flexible and calls for such procedural protections as the
particular

situation demands" taking into consideration (1) the private interest in retaining employ-

ment, (2) the risk of erroneous termination through the procedures used and the probable

value, if any, of additional procedural safeguards, and (3) the government interests in

expeditious removal of unsatisfactory employees and avoidance of administrative burdens

that additional procedures would entail.  Mathews, 424 U.S. at 334-35, 96 S. Ct. at 902-

03 (internal quotations omitted).  See also Loudermill, 470 U.S. at 542-43, 105 S. Ct. at

1493.

This court finds that the procedures available to Butler, particularly in view of the

nature of the deprivation (removal from a volunteer position) and the town's interest in

conducting efficient removal proceedings (in light of upcoming hearings), were sufficient

to guard against erroneous removal.  Notably, Butler received notice of the specific

charges against her and had the opportunity to address those charges at a hearing before

the Board.  Butler was represented by counsel at the Show Cause Hearing, and her

counsel was able to dispute the Board's accusations and to present relevant documentary

evidence, including the letter from Town counsel on which Butler relied in voting on the

Vallaincourt matter.[15]  Because the Board called no witnesses to testify against Butler,

and Butler's counsel was able to address the Board's contentions through argument, the

---

[15]  As detailed supra, at note 13, the court agrees with the Board that evidence regarding
the attendance records of other ZBA members or of those who were serving on separate town
boards or committees was not relevant to the charges against Butler, and there was no need to
make that information available prior to the hearing.

fact that Butler had no opportunity to examine witnesses did not diminish her ability to meet the charges against her. See Loudermill, 470 U.S. at 546, 105 S. Ct. at 1495 ("The essential requirements of due process . . . are notice and an opportunity to respond.").

The court recognizes that "the existence of post-termination procedures is relevant to the necessary scope of pretermination procedures." Id. at 547 n.12, 105 S. Ct. at 1496 n.12. Butler argues that the only post-deprivation remedy available to her was an action for certiorari under Mass. Gen. Laws ch. 249, § 4. See Pl. Mem. at 30. She further asserts that a claim for certiorari is inherently limited due to the arbitrary and capricious standard of review and the limited state of the record on review. See id. at 30-32. Even if Butler is correct that an action for certiorari is an incomplete means of obtaining judicial review, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews, 424 U.S. at 333, 96 S. Ct. at 902 (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed.2d 62 (1965)). In this case, Butler received more than notice and an opportunity to be heard at the pre-deprivation stage of the proceedings. As set forth above, the Board held a hearing at which Butler, through counsel, had a meaningful opportunity to present her side of the case. Accordingly, the court concludes that the pre-deprivation proceedings, combined with Butler's ability to obtain judicial review by way of a claim for certiorari afforded her all of the process that is due. See Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 40 (1st Cir. 1992) (adequate post-deprivation

process was available where appellants were able to obtain judicial review of alleged administrative abuses).

Finally, the record does not support Butler's assertion that Beaton's bias deprived her of a right to an impartial decisionmaker. "Concededly, a 'fair trial in a fair tribunal is a basic requirement of due process.'" Withrow v. Larkin, 421 U.S. 35, 46, 95 S. Ct. 1456, 1464, 43 L. Ed.2d 712 (1975) (citation omitted). "This applies to administrative agencies which adjudicate as well as to courts." Id. Butler has failed to demonstrate, however, that Beaton harbored actual bias against her that would raise due process concerns. The record shows that Beaton's increasing frustration over the ZBA's performance and attendance records arose as a result of the importance that he placed on the ch. 40B affordable housing hearings and the ZBA's ability to handle those hearings competently. Beaton's criticisms of the ZBA's performance generally do not demonstrate that he had a particular bias against Butler.[16] Moreover, Butler has not shown that circumstances existed which gave rise to the probability of actual, constitutionally intolerable bias on Beaton's part, such as where the decisionmaker has a pecuniary interest in the outcome of the proceeding or animosity toward the plaintiff as a result of

---

[16] In the videotape of Butler's Show Cause Hearing, Def. Ex. 10, Beaton did appear agitated and somewhat hostile. Nevertheless, there is insufficient support for the plaintiff's assertion that Beaton's conduct at the hearing demonstrated a bias against her, or that the manner in which Beaton asserted control over the proceedings illustrated an attempt to deprive Butler of a fair hearing rather than an effort to conduct a focused hearing.

personal criticism or attacks.  See id. at 47, 95 S. Ct. at 1464; Brasslett v. Cota, 761 F.2d

827, 837 (1st Cir. 1985).  Although Butler's counsel attacked Beaton's impartiality and

integrity in connection with his effort to obtain Beaton's recusal from the Show Cause

Hearing, the plaintiff has not demonstrated that Beaton reduced the dispute to a personal

level, or possessed any particular animosity toward her as a result.  Compare Taylor v.

Hayes, 418 U.S. 488, 501, 94 S. Ct. 2697, 2705, 41 L. Ed.2d 897 (1974) (setting aside

contempt judgment where judge exhibited "a mounting display of an unfavorable

personal attitude toward" and became "embroiled in a running controversy with

petitioner"); Mayberry v. Pennsylvania, 400 U.S. 455, 465-66, 91 S. Ct. 499, 505, 27 L.

Ed.2d  532 (1971) (vacating contempt judgment where defendant had directed numerous,

highly personal attacks at the judge).  This is simply not a situation where Beaton had

become so "personally embroiled" in the controversy as to make him unfit to chair the

Show Cause Hearing.  See id. at 465, 91 S. Ct. at 504-05.  This court finds, therefore, that

Butler's allegations of bias do not rise to the level of a due process violation.

## IV.  CONCLUSION

The court finds that the defendants did not violate the plaintiff's constitutional

right to procedural due process, but that their decision to remove the plaintiff from her

position as an alternate member of the Kingston ZBA was arbitrary and capricious.

Accordingly, for the reasons stated herein, this court recommends to the District Judge to

whom this case is assigned that the Plaintiff's Motion for Partial Judgment on the

Pleadings (Docket No. 16), which this court has converted into a motion for summary

judgment, be ALLOWED.[17]


                                               __/ s / Judith Gail Dein_____

                                               Judith Gail Dein

                                               United States Magistrate Judge

---

[17]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).